## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

RONALD GARBER and SHERRY          )
HELGOE,                           )
                                  )
            Plaintiffs,           )
                                  )
        v.                        )
                                  )      Case No. 3:20-cv-00025-SMY-RJD
LORENZINI & ASSOCIATES, LTD.,     )
RONALD N. LORENZINI, JR. and ERIC )
A. FREELAND                       )
                                  )
            Defendants.           )

## LORENZINI DEFENDANTS' ANSWER TO PLAINTIFFS' COMPLAINT

Defendants, Lorenzini & Associates, Ltd., and Ronald N. Lorenzini, Jr. (collectively, "Lorenzini Defendants"), by and through their attorneys Wilson Elser Moskowitz Edelman & Dicker LLP, and in Answer to Plaintiffs' Complaint for Legal Malpractice, states as follows:

## NATURE OF THE ACTION

1.      This is an action for legal malpractice to recover damages suffered at the hands of the attorneys who undertook to protect the interests of Garber and Helgoe.

**ANSWER:   Lorenzini Defendants admit that Plaintiffs' Complaint makes allegations of legal malpractice against Plaintiffs' former attorneys.**

2.      Instead of protecting Garber's and Helgoe's individual interests, Defendants undertook conflicted joint representation of Garber and Helgoe and six other separate defendants named in a suit, that largely involved other clients' alleged violations of non-disclosure, non-solicitation, non-competition and independent consulting agreements captioned, *Corcoran Consulting, LLC and B& B Mills Consulting, Inc. v.*

*Cremservices, LLC a/k/a Consolidated Real Estate Management Services, d/b/a Monycall.com; Robert Corcoran; Brenda Corcoran; Real Estate Learning Institute, Inc. (a dissolved Illinois corporation); Real Estate Learning Institute, Inc. (a Florida corporation); Ronald Garber; Sherry Helgoe; Nancy Mueller: Laura Kombrink and Hannah Mullenix*, pending in the United States District Court for the Southern District of Illinois under case no. 3:17-cv-803 (the "*Corcoran* Litigation.")

    **ANSWER:   Lorenzini Defendants admit that one of its former attorneys, Defendant Freeland, undertook representation of Plaintiffs in the Corcorcan Litigation. Lorenzini Defendants deny that said representation of Plaintiffs in the Corcoran Litigation was "conflicted joint representation." Lorenzini Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 2.**

    3.    Defendants' negligence in, *inter alia*, undertaking joint representation of Garber and Helgoe on one hand, and the six other named defendants who had conflicting interests, on the other hand, and their failures to properly defend, preserve evidence, handle discovery and timely disclose a damages expert, severely impaired Garber's and Helgoe's defense of the *Corcoran* Litigation. As a result, Garber and Helgoe were placed in the predicament of having to pay substantial sums to defend and settle a case that would have otherwise been dismissed, tried to a successful defense verdict or resolved for a far lesser sum.

    **ANSWER:   Lorenzini Defendants answer that Paragraph 3 asserts legal conclusions to which no responses are required. To the extent a response is required,**

**Lorenzini Defendants deny the allegations of Paragraph 3 to the extent they are directed at Lorenzini Defendants rather than Freeland.**

## THE PARTIES

4.     Plaintiff Ronald Garber is an individual residing in the City of Yorba Linda, County of Orange, in the State of California.

**ANSWER:     Admit.**

5.     Plaintiff Sherry Helgoe is an individual residing in the City of Yorba Linda, County of Orange, in the State of California.

**ANSWER:     Admit.**

6.     Defendant Lorenzini & Associates, Ltd. is a law firm organized as an Illinois professional corporation with its principal place of business in Plainfield, Illinois, Kendall County.

**ANSWER:     Admit.**

7.     Defendant Ronald N. Lorenzini, Jr. is a resident of the State of Illinois and was, at all times material to this Complaint, an attorney licensed to practice law, and a partner with Lorenzini & Associates, Ltd. in its Plainfield, Illinois office located in Kendall County, Illinois.

**ANSWER:     Admit.**

8.     Defendant Eric A. Freeland ("Freeland") is a resident of the State of Illinois and was, at all times material to this Complaint, an attorney licensed to practice law, and an employee and agent of Lorenzini & Associates, Ltd. in its Plainfield, Illinois office located in Kendall County, Illinois.

**ANSWER:**    **Admit that Freeland is an attorney licensed to practice law and Admit further that Freeland was an employee and agent of Lorenzini & Associates, Ltd. Lorenzini Defendants are without knowledge and information sufficient to form a belief about the remaining allegations of Paragraph 8.**

## JURISDICTION & VENUE

9.    Because Garber and Helgoe are citizens of the State of California and Defendants are citizens of the State of Illinois, there is complete diversity of citizenship. The matter in controversy in this case exceeds the sum or value of $75,000.00, exclusive of interest and costs. Therefore, this action is within this Court's original jurisdiction under 28 U.S.C. § 1332.

**ANSWER:**    **Lorenzini Defendants admit that there exists diversity of citizenship. Lorenzini Defendants are without knowledge and information sufficient to form a belief about the remaining allegations of Paragraph 9.**

10.    Venue is proper under 28 U.S.C. § 1391(b)(2) in that this action has been brought within the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred and within which each Defendant is subject to personal jurisdiction.

**ANSWER:**    **Lorenzini Defendants admit the allegations of Paragraph 10.**

## FACTS

### The Underlying *Corcoran* Litigation

11.    In 1989, Robert Corcoran founded Corcoran Consulting, LLC ("Corcoran Consulting"), a business that performed real estate coaching and consulting services. As of

November 30, 2015, B&B Mills owned 23.1% of the membership interests in Corcoran

Consulting and Robert Corcoran, through RELI, owned the other 76.9%.

**ANSWER:** **Lorenzini Defendants are without knowledge or information**

**sufficient to form a belief as to the truth of the allegations in Paragraph 11.**

12.     On November 30, 2015, B&B Mills and RELI and/or Robert Corcoran

entered into a Membership Interest Purchase Agreement (the "Purchase Agreement"),

whereby B&B Mills purchased the remaining membership interests in Corcoran

Consulting, LLC ("Corcoran Consulting") from Robert Corcoran and/or RELI.

**ANSWER:** **Lorenzini Defendants admit the allegations of Paragraph 12**

**insofar as they are consistent with the plain language of the alleged documents cited**

**therein.**

13.     As part of the Purchase Agreement, Robert Corcoran entered into a non-

disclosure and non-solicitation agreement (the "NDA") for a one-year period whereby he

agreed, *inter alia*, not to use Corcoran Consulting information, conduct competing

business, or solicit or recruit employees.

**ANSWER:** **Lorenzini Defendants admit the allegations of Paragraph 13**

**insofar as they are consistent with the plain language of the alleged documents cited**

**therein.**

14.     After the entry into the Purchase Agreement, Robert Corcoran continued to

work for Corcoran Consulting as an independent contractor pursuant to an Independent

Consulting Agreement whereby he agreed not to reveal confidential information or trade

secrets belonging to Corcoran Consulting.

**ANSWER:**   **Lorenzini Defendants admit that Robert Corcoran worked for Corcoran Consulting "for a time." By way of further answer, Lorenzini Defendants admit the remaining allegations of Paragraph 14 insofar as they are consistent with the plain language the Independent Consulting Agreement cited therein.**

15.    Garber has for years participated and worked in the real estate industry. Garber has also known Robert Corcoran since the 1990's, as both worked in the real estate industry, Garber had been a client of Corcoran's, and at times they worked together and developed materials for use in their respective real estate businesses. As a client of Corcoran's Garber was granted permission to use certain Corcoran materials.

**ANSWER:**   **Lorenzini Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15.**

16.    Helgoe works as a marriage and family therapist, college professor, and is married to Garber.

**ANSWER:**   **Lorenzini Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 16.**

17.    In and around 2016, Corcoran approached Garber concerning the formation of a business to promote their specific skills in the real estate industry, and they agreed to and did form CREMServices, LLC.

**ANSWER:**   **Lorenzini Defendants admit that Corcoran and Garber agreed to and formed CREMServices, LLC in and around 2016. Lorenzini Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 17.**

18.     The documents that created CREMServices reflected its members to be Garber, Helgoe, Robert Corcoran and his wife Brenda Corcoran. However, at relevant times, no operating agreement was entered into for CREMServices.

**ANSWER:     Lorenzini Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 18.**

19.     The inclusion of Helgoe on the articles of incorporation for the formation of CREMServices was Helgoe's only involvement in CREMServices and she thereafter did not participate in or have an ownership interest in the business in any manner.

**ANSWER:     Lorenzini Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 19.**

20.     At the time of the formation of CREMServices Robert Corcoran was still working in and providing services through Corcoran Consulting.

**ANSWER:     Lorenzini Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20.**

21.     Although Garber was aware that Bubba Mills had purchased Robert Corcoran's business, he was not informed nor aware of any contractual undertakings Robert Corcoran had made with Mills, including the fact Corcoran had sold his business to Mills for $2,700,000 and the sale included confidentiality, non-disclosure, non-competition, non-solicitation and independent contractor agreements. Instead, Garber believed Corcoran had the authority to use and transmit to Garber the information possessed by Corcoran.

**ANSWER:     Lorenzini Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21.**

22.     In the course of starting the CREMServices business, CREMServices hired Nancy Mueller ("Mueller") who was at one time previously employed by Corcoran Consulting as a bookkeeper. While a bookkeeper with Corcoran Consulting Mueller entered into a Bookkeeper Position Agreement, in which Mueller agreed to not engage in other business activity, to devote her full time and attention to Corcoran Consulting, and further agreed to not disclose or reveal confidential information or trade secrets. Mueller also entered a Non-Compete Agreement with Corcoran Consulting, wherein Mueller agreed to not disclose customer lists, databases, marketing systems, trade secrets and other confidential material, and to not do business or consulting that would create competition with Corcoran Consulting for a period of 24 months after leaving her position.

**ANSWER:   Lorenzini Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22.**

23.     In the course of starting the CREMServices business, in February 2017, Robert Corcoran advised his assistant, Nancy Mullenix ("Mullenix"), who at the time worked at Corcoran Consulting, to provide Garber with certain information in Corcoran's possession. Mullenix and Corcoran Consulting entered into a Non-Disclosure Agreement in 2016, in which Mullenix agreed to not disclose or reveal confidential information or trade secrets.

**ANSWER:   Lorenzini Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23.**

24.     Garber was unaware of Mueller's and Mullenix' agreements with Corcoran Consulting and also did not believe the information to be proprietary or that there was any restriction on the use or transmission of the information because, among other things, the

information included materials that Garber and Corcoran had developed over the years while working in the real estate education and consulting industry, it was generally publicly available, or it was information Garber had permission to use as a client of Corcoran.

**ANSWER:   Lorenzini Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24.**

25.     In response to Robert Corcoran's request, Garber expected to receive only certain specific documents he and Corcoran had previously developed or worked on together. Instead, Mullenix transmitted to Garber documents much greater than he needed or wanted through links to the "Corcoran Consulting Computer Folder."

**ANSWER:   Lorenzini Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 25.**

26.     At all times relevant, Garber was assured by Robert Corcoran that CREMServices had a right to use Corcoran Consulting documents and information.

**ANSWER:   Lorenzini Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 26.**

27.     On July 27, 2017, Corcoran Consulting and B&B Mills filed suit against CREMServices, Ronald Garber, Sherry Helgoe, Nancy Mueller, Laura Kombrink, and Hannah Mullenix in the *Corcoran* Litigation.

**ANSWER:   Lorenzini Defendants admit the allegations in Paragraph 27.**

28.     The complaint in the *Corcoran* Litigation alleged a number of claims related to Robert Corcoran's alleged breach of the NDA and Independent Consulting Agreements that centered around his wrongful acquisition of Corcoran Consulting documents and/or information for use by CREMServices. Included was Mueller's providing to Garber the

link to Corcoran Consulting documents as well as Mueller's unauthorized downloading of other information, Mullinex's copying of Corcoran Consulting's Top Producer database to her home computer, and Mullinex's work for CREMServices while still employed by Corcoran Consulting. The complaint further detailed Robert Corcoran's, Mueller's and Mullinex's additional use and duplication of Corcoran Consulting materials and the breaches of their agreements with Corcoran Consulting.

**ANSWER:   Lorenzini Defendants admit that the Complaint in the Corcoran Litigation contains the allegations enumerated in Paragraph 28. Lorenzini Defendants are without knowledge or information sufficient to form a belief as to the authenticity or truth of those statements.**

29.    Helgoe and Garber had no contractual undertakings with the *Corcoran* Litigation plaintiffs and did not know of Corcoran's, Mueller's and Mullinex's contractual undertakings and breaches. Nevertheless, they were named as co-conspirators and co-actors in the acts committed by the other named defendants.

**ANSWER:   Lorenzini Defendants admit that Helgoe and Garber were named as co-conspirators and co-actors "in the acts committed by the other named defendants" in the Corcoran Litigation. Lorenzini Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 29.**

30.    The complaint in the *Corcoran* Litigation sought to recover monetary damages from all the defendants for conspiracy to violate the Computer Fraud & Abuse Act 18 U.S. C. § 1030(b), violation of the Illinois Trade Secrets Act 765 ILCS § 1065/2, tortious interference, and civil conspiracy, among other claims.

**ANSWER**:    Lorenzini Defendants admit that the Complaint in the Corcoran Litigation seeks the relief enumerated in Paragraph 30.

### Defendants' Joint Conflicted Representation

31.    To address and defend the suit, Garber and Helgoe sought out representation and consulted with Defendants. Defendants proposed representing all named defendants in the suit, except for Mueller and Mullenix. Defendants, however, did not make any individualized assessment of the claims against Garber and Helgoe or advise them of the implications or risks of the proposed joint representation.

**ANSWER**:    Lorenzini Defendants admit that Garber and Helgoe consulted with Lorenzini Defendants "to address and defend" the Corcoran Litigation. Lorenzini Defendants deny the remaining allegations in Paragraph 31.

32.    Among other things, Defendants failed to consider the implications of the fact that Garber and Helgoe had no knowledge of the agreements entered into by Robert Corcoran, Mueller, and Mullinex, agreements Robert Corcoran, Mueller and Mullinex were obviously aware of. As a result, Garber and Helgoe were in a far different position from the other named defendants, not only because they did not enter into the subject agreements, but also because many of the claims included an intent element and their lack of knowledge showed a lack of intent.

**ANSWER**:    Lorenzini Defendants answer that Paragraph 32 asserts legal conclusions to which no response is required. To the extent a response is required, Lorenzini Defendants state that they are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 32.

33.    Defendants also failed to consider or advise Garber and Helgoe that a joint representation with the other defendants would negatively impact their particular and individual defenses to the claims.

**ANSWER:    Lorenzini Defendants answer that Paragraph 33 asserts legal conclusions to which no response is required. To the extent a response is required, Lorenzini Defendants state that they are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 33.**

34.    Among other things, a joint representation: supported the complaint's allegations that the parties conspired and acted in concert; prevented Garber and Helgoe from isolating their particular lack of involvement and lack of knowledge in order to effectively and efficiently further their defenses; included Garber and Helgoe in protracted discovery that mainly involved Robert Corcoran and his interests; prevented Garber and Helgoe from filing third-party or cross claims against Robert Corcoran; prevented Garber and Helgoe from vigorously cross examining Robert Corcoran or the other co-clients in order to obtain evidence favorable to Garber and Helgoe and demonstrate their lack of involvement and knowledge; subjected Garber and Helgoe to the risk that other co-clients change counsel which would either require Garber and Helgoe to also change counsel due to the additional conflict created thereby or otherwise hobble their defense as a result.

**ANSWER:    Lorenzini Defendants answer that Paragraph 34 asserts legal conclusions to which no response is required. To the extent a response is required, Lorenzini Defendants state that they are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 34.**

35.     Defendants also either knew or failed to consider that Garber's and Robert Corcoran's testimony on a key points was in direct conflict. As an example, Garber maintains that he was unaware the non-disclosure and confidentiality agreements, whereas Robert Corcoran claimed that Garber was aware of them.

**ANSWER:     Lorenzini Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 35.**

36.     As a result of the allegations in the complaint, the disparate positions and particular interests of those involved, a concurrent conflict of interest existed that prevented Defendants from jointly representing Garber and Helgoe and the other co-clients or, alternatively, required their informed consent to the representation.

**ANSWER:     Lorenzini Defendants answer that Paragraph 36 asserts a legal conclusion to which no response is required. To the extent a response is required, Lorenzini Defendants state that they are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 36.**

37.     Despite the conflict and the failures to consider and or advise as described Defendants nevertheless proposed and pressured Garber and Helgoe to agree to joint representation. This is demonstrated in Defendant Ronald Lorenzini's August 26, 2017 email to Garber that stated, in part:

Ron... I talked again with Bob [Corcoran]. Here's where we are...

There are **currently no conflicts existing v. you and any of the other defendants** we are representing (i.e., all but Nancy) and therefore we can represent you as well. Not only will our representation benefit you but **having you on board benefits all**. You understand the issues and with your knowledge and access to documentation, you can assist with the support of the defense. In addition the process is ultimately more efficient and as well **presents a unified stance**.

(emphasis added)

**ANSWER:   Lorenzini Defendants deny the allegation that they "proposed and pressured Garber and Helgoe to agree to joint representation," and Lorenzini Defendants further deny that the quoted email "demonstrates" any attempt to propose and pressure Garber and Helgoe into agreeing to joint representation. By way of further answer, Lorenzini Defendants admit the accuracy of the quoted portion of Ronald Lorenzini's August 26, 2017, email to Garber.**

38.    Defendant Ron Lorenzini's statement that the were no conflicts was plainly wrong, and certainly one-sided and incomplete as it does not disclose any of the many risks of joint conflicted representation or provide that the necessary informed consent was obtained from Garber and Helgoe.

**ANSWER:   Lorenzini Defendants deny the allegations of Paragraph 38 insofar as they seek to alter the meaning and effect of the August 26, 2017, Email. Lorenzini Defendants further answer that the quoted portion of the August 26, 2017, Email speaks for itself. By way of further answer, Lorenzini Defendants state that the remaining allegations of Paragraph 38 contain legal conclusions to which no response is required.**

39.    Also, given, among other things, Corcoran's and Garber's conflicting positions on the non-compete agreement Defendant Lorenzini's statement that a "unified stance" could be made with joint representation was also plainly wrong.

**ANSWER:   Lorenzini Defendants answer that Paragraph 39 asserts legal conclusions to which no response is required. To the extent a response is required,**

**Lorenzini Defendants state that they are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 39.**

40.     Defendant Ron Lorenzini's statement is also an acknowledgement that he sought to represent Garber and Helgoe in order to benefit the co-clients, and yet failed to advise Garber and Helgoe of any of the risks of such representation or obtain their informed consent.

**ANSWER:     Lorenzini Defendants deny the allegations of Paragraph 40.**

41.     Defendant Ron Lorenzini's August 26, 2017 email also further demonstrates a conflict through the sharing of fees between the co-clients, and even his taking sides on that conflict to benefit himself and his firm. Specifically, Defendant Ron Lorenzini wrote:

> As we discussed, Bob [Corcoran] has requested payment of 50% of all fees incurred to date and through the Motion to Dismiss – a large sum. I talked with Bob re a compromise proposal/solution and the following summarizes same:
> - You contribute $5k to fees incurred to date;
> - You agree to pay all fees incurred v. you re the Motion to Dismiss;
> - Fees will not exceed an aggregate $15K (this assumes we are successful via the Motion to Dismiss, without extensive further briefing and without a full hearing on same);
> - $5K paid upon signing of Engagement Letter.
>
> I believe this to be a fair compromise and as with any true compromise it stings both sides. Perhaps in short run you incur less if engaging your own counsel. But I'm sure you've considered this question: is there a premium to be paid to maintain strong relationship with Ron and related opportunities and ventures?

**ANSWER:     Lorenzini Defendants deny the allegations of Paragraph 41 insofar as they seek to alter the meaning and effect of the August 26, 2017, Email. Lorenzini Defendants further answer that the quoted portion of the August 26, 2017, Email speaks for itself.**

42.     The same email also shows Defendant Ron Lorenzini, instead of properly advising Helgoe and Garber or obtaining their informed consent, pressed for a quick response. He stated:

> Respectfully Ron, this is a firm proposal and I need an answer quickly - by Monday morning. Eric needs to know re pleadings and strategy if you in or out.

**ANSWER:    Lorenzini Defendants deny the allegations of Paragraph 42 insofar as they seek to alter the meaning and effect of the August 26, 2017, Email. Lorenzini Defendants further answer that the quoted portion of the August 26, 2017, Email speaks for itself.**

43.     In a follow up email to Garber on August 29, 2017 Defendant Ron Lorenzini further bullied Garber into agreeing to the representation, again with no disclosure of the conflicts, risks or informed consent.

**ANSWER:    Ronald Lorenzini denies ever "bullying" Garber and further denies the allegation that Lorenzini Defendants did not disclose "the conflicts, risks or informed consent." Lorenzini Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 43.**

44.     On August 27, 2017, Defendant Ron Lorenzini sent Garber and Helgoe a written engagement agreement for the *Corcoran* Litigation asking them to consent to their "common representation."

**ANSWER:    Lorenzini Defendants admit that an Engagement Agreement was sent to, and executed by Garber and Helgoe. Lorenzini Defendants deny any**

**allegations in Paragraph 44 that are inconsistent with the Engagement Agreement executed by Garber and Helgoe.**

45.     Defendants' engagement agreement further wrongly advised Garber and Helgoe that their "common representation" did not involve a concurrent conflict of interest, and that they "reasonably believed" it could provide "competent representation to each of you." Given the adversity of the interests of Garber and Helgoe and the other co-clients, Defendants had a conflict of interest that could not be waived, was not effectively waived and which precluded them from providing competent representation.

**ANSWER:    Lorenzini Defendants answer that Paragraph 45 asserts legal conclusions to which no response is required. To the extent a response is required, Lorenzini Defendants state that the "Engagement Agreement" referenced in Paragraph 45 speaks for itself and denies any characterization of its contents that is contrary to its plain language. Lorenzini Defendants state that they are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 45.**

46.     In addition, although Helgoe and Garber were first told their representation would cost only $15,000, that estimate became woefully inadequate because, as a result of the joint conflicted representation, Helgoe and Garber were pulled into having to respond to and/or pay for discovery, most of which involved Robert Corcoran, when, had they been separately represented, the discovery could have been entirely avoided or substantially limited and their respective motions to dismiss could have been advanced and resolved.

**ANSWER:    Lorenzini Defendants answer that Paragraph 46 asserts legal conclusions to which no response is required. To the extent a response is required,**

**Lorenzini Defendants state that they are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 46.**

47.     Further, after additional fees accrued as a result of the joint conflicted representation, Defendants wrongfully advocated for a split of the defense costs between their already conflicted co-clients and encouraged and advised Helgoe and Garber to agree to an arbitrary 75% / 25% split.

**ANSWER:     Lorenzini Defendants admit that a fee split was discussed with Helgoe and Garber, and deny any characterization of that split as "arbitrary". To the extent the allegations of Paragraph 47 are not legal conclusions which no response is required, Lorenzini Defendants deny the remaining allegations of Paragraph 47.**

48.     Thus, Defendants not only had a conflict of interest in undertaking the joint representation in the first place, they had a conflict of interest that prevented them from advocating or being involved with the fee split agreement between their co-clients who obviously had individual and particular interests. Accordingly, Defendants encouraged and advocated for the fee split for their own best interests in getting paid and/or the best interests of the other co-clients, as opposed to Helgoe's and Garber's individualized best interests.

**ANSWER:     Lorenzini Defendants answer that Paragraph 48 asserts legal conclusions to which no response is required. To the extent a response is required, Lorenzini Defendants state that they are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 48.**

49.     Moreover, further evidencing the conflicted representation, Defendants initially filed counterclaims and third-party claims in the Corcoran Litigation on behalf of

Robert Corcoran and one of his entities only. The counterclaims and third-party claims furthered Garber's and Helgoe's exposure to defense fees charged by Defendants, further entrenched them in protracted discovery – including that which mainly involved Corcoran and his interests only – and further delayed resolution of Garber's and Helgoe's individualized claims and defenses.

**ANSWER:   Lorenzini Defendants admit that Paragraph 49 accurately recites certain filings in the Corcoran Litigation. By way of further answer, Paragraph 49 contains legal conclusions to which no response is required. To the extent a response is required, Lorenzini Defendants state that they are without knowledge and information sufficient to form a belief about the truth of the remaining allegations in Paragraph 49.**

**Defendants' Negligent Handling of the *Corcoran* Litigation**

50.    Instead of asserting Garber's and Helgoe's unwitting and/or noninvolvement in the matters alleged in the *Corcoran* Litigation, Defendants negligently implemented a joint defense strategy that unnecessarily delayed the resolution of the claims against them and had the effect of suggesting that Garber and Helgoe were accomplices to Robert and Brenda Corcoran, even though they had no such involvement in their activities.

**ANSWER:    Paragraph 50 contains legal conclusions to which no response is required. To the extent a response is required, Lorenzini Defendants state that they are without knowledge and information sufficient to form a belief about the truth of the allegations in Paragraph 50. To the extent Paragraph 50 does not contain legal conclusions to which no response is required, Lorenzini Defendants deny that any**

implementation of a joint defense strategy in the Corcoran Litigation was
"negligently implemented."

51.     With non-conflicted representation separate from the other defendants
Garber and Helgoe would have been distinguished and distanced from the alleged
contractual breaches and wrongful conduct of Corcoran, Mueller and Mullinex because
they had no agreements with Corcoran Consulting and no knowledge of the agreements
with Corcoran. Instead, Defendants' joint conflicted representation furthered the theory
that the underlying defendants acted in concert and conspired, among other things. This is
a risk that was never disclosed to Garber or Helgoe by Defendants.

**ANSWER:     Paragraph 51 contains legal conclusions to which no response is
required. To the extent a response is required, Lorenzini Defendants state that they
are without knowledge and information sufficient to form a belief about the truth of
the allegations in Paragraph 51.**

52.     Independent representation for Garber and Helgoe would have also
advanced their interests in a prompter and cost-efficient fashion. They stood in a far
different position from the other co-clients and could have advanced their defenses with
little or no discovery burden. Instead, through the joint conflicted representation their
defenses were not advanced, and they became mired in expensive discovery, largely
involving Corcoran and the other co-clients. This is a risk that was never disclosed to
Garber or Helgoe by Defendants.

**ANSWER:     Paragraph 52 contains legal conclusions to which no response is
required. To the extent a response is required, Lorenzini Defendants state that they**

are without knowledge and information sufficient to form a belief about the truth of the allegations in Paragraph 52.

53.     Independent counsel would have also advised Garber and Helgoe of the availability of contribution and indemnity claims against Robert Corcoran and the other co-clients, which, had they been filed, would have further distinguished and distanced their conduct from the "target" defendants and hastened resolution. This is an avenue that was never disclosed to Garber or Helgoe or explored by Defendants.

**ANSWER:     Paragraph 53 contains legal conclusions to which no response is required. To the extent a response is required, Lorenzini Defendants state that they are without knowledge and information sufficient to form a belief about the truth of the allegations in Paragraph 53.**

54.     Independent representation also would have sought and obtained for Garber and Helgoe an early settlement with the Corcoran Consulting plaintiffs for a relatively nominal sum, especially given that Helgoe had no involvement in the matters alleged and Garber could have offered assistance to the plaintiffs in their claims against Corcoran and the other named defendants. This is an avenue that was never disclosed to Garber or Helgoe or explored by Defendants.

**ANSWER:     Paragraph 54 contains legal conclusions to which no response is required. To the extent a response is required, Lorenzini Defendants state that they are without knowledge and information sufficient to form a belief about the truth of the allegations in Paragraph 54.**

55.     Also, because Robert and Brenda Corcoran were paying a greater percentage of the defense fees, Defendants largely, if not entirely, took direction from them

in a manner that served their best interests and were either detrimental to or did not consider the individual interests of Garber and Helgoe. This is a fact that was never disclosed to Garber or Helgoe by Defendants.

**ANSWER:   Lorenzini Defendants are without knowledge and information sufficient to form a belief about the truth of the allegations in Paragraph 55.**

56.     To make matters even worse, Defendants took direction from Robert Corcoran to refuse to turn over his financial documents in discovery, and implemented an overarching strategy of forcing the *Corcoran* Litigation plaintiffs to spend as much money as possible in hopes of forcing them to settle or drop the case due to an inability to pay plaintiffs' counsel. Defendants did not seek or obtain Garber's or Helgoe's consent to employ this ill-advised, dilatoriness strategy, which resulted in motions to compel, sanctions, increased fees charged to Garber and Helgoe, a delay in the resolution of their individualized claims and defenses, and prejudice to their interests before the court.

**ANSWER:   Lorenzini Defendants are without knowledge and information sufficient to form a belief about the truth of the allegations in Paragraph 56.**

57.     The joint and conflicted representation further harmed Helgoe and Garber because Robert Corcoran and other co-client witnesses were not properly questioned by Defendants in their depositions in order to support Garber's and Helgoe's defense theories when individualized representation would have presented no impediment to such examination. This is a risk that was never disclosed to Garber or Helgoe by Defendants.

**ANSWER:   Lorenzini Defendants are without knowledge and information sufficient to form a belief about the truth of the allegations in Paragraph 57.**

58.     Defendants also never disclosed to Garber or Helgoe the risks, costs, conflicts and negative implications associated with having one of their co-clients terminating Defendants and choosing new counsel to defend the *Corcoran* Litigation. These risks, costs, conflicts and negative implications came to fruition when Robert and Brenda Corcoran terminated Defendants in 2018 and hired new counsel. As a result, Defendants had an even more pronounced conflict of interest because they would have been prohibited from, for example, using confidential client communications learned while counsel for the Corcorans and otherwise vigorously cross examining the Corcoran's to assert Garber's and Helgoe's defenses.

**ANSWER:     Lorenzini Defendants admit that Robert and Brenda Corcoran terminated Lorenzini Defendants (through terminating Freeland) in 2018 and hired new counsel with respect to the Corcoran Litigation. By way of further answer, Lorenzini Defendants state that Paragraph 58 contains legal conclusions to which no response is required. However, to the extent the remaining allegations of Paragraph 58 do not contain legal conclusions, Lorenzini Defendants are without knowledge and information sufficient to form a belief about the remaining allegations of Paragraph 58.**

59.     Due to Defendants' joint conflicted representation and failures, they also failed to advise and address the risks of other co-clients settling the claims against them and leaving Garber and Helgoe as the remaining "target" defendants. This is also a risk that came to pass when the Corcorans hired new counsel and settled with the *Corcoran* Litigation plaintiffs, leaving Garber and Helgoe as the only remaining "target" defendants months prior to trial. As a result, Defendants failed preserve for trial Robert Corcoran's

testimony supportive of Garber's and Helgoe's defense theories, Corcoran's settlement put him beyond the reach of the court's subpoena power, and Defendants turned a matter where Garber and Helgoe had little or no involvement or exposure into a case where they were the remaining target defendants unprepared to address the potentially devastating damage claims.

**ANSWER:**    **Lorenzini Defendants admit that Robert and Brenda Corcoran hired new counsel with respect to the Corcoran Litigation in 2018 and subsequently settled with the Plaintiffs in the Corcoran Litigation. By way of further answer, Lorenzini Defendants state that Paragraph 59 contains legal conclusions to which no response is required. However, to the extent the remaining allegations of Paragraph 59 do not contain legal conclusions, Lorenzini Defendants are without knowledge and information sufficient to form a belief about the remaining allegations of Paragraph 59.**

60.    Defendants also failed to communicate important events in the *Corcoran* Litigation, such as the deposition of Bubba Mills, in time for adequate preparation and involvement by Garber and Helgoe.

**ANSWER:**    **Lorenzini Defendants are without knowledge or information sufficient to form a belief about the truth of the allegations contained in Paragraph 60.**

61.    Defendants also were not competent to defend the *Corcoran* Litigation and manage the electronic discovery that was obviously at the center of case. As Eric Freeland admitted in a court filing in the case, he "had never been involved in a case involving e-discovery to the extent involved in this case. Defendants' counsel had never retained an e-

discovery firm and was unfamiliar with the data collection and review process involved in a case where more than 35,000 emails were collected." Freeland also admitted he had never used the Relativity software program used to manage the e-discovery.

    **ANSWER:**   **The allegations of Paragraph 61 are not directed at Lorenzini Defendants. As such, Lorenzini Defendants makes no answer the allegations contained therein.**

    62.    Freeland's lack of competence harmed Garber and Helgoe through the inordinate amount of time devoted for him to attempt to learn how to handle e-discovery, and through his failure to timely and fully respond to the *Corcoran* Litigation plaintiffs' discovery requests. As a result, orders for compliance were entered, which were not complied with, and ultimately the court entered a sanction award against Freeland in the sum of $38,750.57 and reserved further sanctions if warranted.

    **ANSWER:**   **The allegations of Paragraph 62 are not directed at Lorenzini Defendants. As such, Lorenzini Defendants makes no answer the allegations contained therein.**

    63.    Defendants' lack of competence is also demonstrated through Freeland's inability to use rudimentary programs such as Dropbox in gathering and processing data supplied by Garber.

    **ANSWER:**   **Defendant Ronald Lorenzini, individually, makes no answer to the allegations of Paragraph 63 as they are not directed at him. Lorenzini & Associates denies the alleged lack of competence. Lorenzini Defendants further state that they are without knowledge and information sufficient to form a belief about the truth of the remaining allegations of Paragraph 63.**

64.     Defendants' lack of competence and negligence is further demonstrated in their handling of Robert Corcoran's laptop computer. Around the time the *Corcoran* Litigation was filed Corcoran "wiped" his laptop of data. This fact alone presented yet another conflict between Corcoran and Garber and Helgoe that was not disclosed or addressed by Defendants. Further, to make matters worse, Freeland represented to counsel for the *Corcoran* Litigation plaintiffs that a back-up had been made when one had not been made.

**ANSWER:     Defendant Ronald Lorenzini, individually, makes no answer to the allegations of Paragraph 64 as they are not directed at him. Lorenzini & Associates denies the alleged lack of competence and negligence. To the extent the remaining allegations are not legal conclusions to which no response is required, Lorenzini Defendants state that are without knowledge and information sufficient to form a belief about the truth of the remaining allegations of Paragraph 64.**

65.     Worse yet, when the Magistrate Daly ordered the laptop to be produced for a third-party forensic review in *Corcoran* Litigation, Freeland disregarded the order and sent it to his own forensic expert.

**ANSWER:     The allegations of Paragraph 65 are not directed at Lorenzini Defendants. As such, Lorenzini Defendants make no answer to the allegations contained therein.**

66.     Also, consistent with Defendants' undisclosed overarching strategy of forcing the *Corcoran* Litigation plaintiffs to spend as much money as possible, as dictated by Robert Corcoran, Defendants failed to timely and fully comply with discovery requests and discovery orders by the court in the *Corcoran* Litigation.

**ANSWER:**     **Lorenzini Defendants deny the allegations of Paragraph 66.**

67.     As a result of Defendants' failures to comply, motions for compliance and sanctions were filed, which further delayed and distracted from the resolution of the claims against Garber and Helgoe, drove up their defense costs, and undermined their standing and credibility before the court.

**ANSWER:**     **Lorenzini Defendants admit that the referenced "motions for compliance and sanctions" were filed in the Corcoran Litigation, but denies any characterization of said filings that contradict the plain language contained therein. Lorenzini Defendants state that they are without knowledge and information sufficient to form a belief about the truth of the remaining allegations in Paragraph 67.**

68.     In a June 14, 2018 Report and Recommendations on the *Corcoran* Litigation plaintiffs' motions for sanctions, Magistrate Judge Reona J. Daly found "the conduct of Defendants' counsel with regard to discovery in this case inexcusable," "there is no excuse for his delay in responding to discovery requests for the previous five months," his "decision to interfere with the laptop was a willful defiance of the Court Order," his conduct was "beyond comprehension," and "his actions are entirely consistent with" an "overarching strategy of forcing the Plaintiffs to spend as much money as possible, in the interest of forcing them to settle or drop the case due to an inability to pay their attorneys." As a result, the court concluded that "ordering Defendants' counsel to pay Plaintiff's expenses incurred due to his persistent delays in responding to discovery is a proportionate response" and ordered Defendant Freeland to pay $38,750.57 and Corcoran to pay $5,000 as a sanction for their

misconduct. The court also reserved entering an award of further sanctions pending completion of forensic analysis.

**ANSWER:    Lorenzini Defendants admit that Paragraph 68 accurately recites portions of Magistrate Judge Daly's Report and Recommendations of June 14, 2018, in the Corcoran Litigation and that those quotations speak for themselves.**

69.    Chief Judge Reagan adopted Magistrate Daly's Report and Recommendation in its entirety in a January 7, 2019 Memorandum & Order that, among other things, found "Defendants' conduct during the five-month period when Plaintiffs' counsel diligently pursued responses to written discovery requests is inexcusable," "it is unreasonable for Defendants to avoid, delay, and duck discovery responsibilities for months on end," the "actions mirror the strategy of driving up Plaintiffs' attorneys' fees described" to the court, and that Defendant Freeland's conduct is "unsettling" and "[h]e employed delay tactics to avoid turning over discovery to plaintiffs, and plaintiffs' counsel had to fight for more than five months to secure documents necessary to advance this litigation, at great financial cost to plaintiffs." As a result, Judge Reagan concluded that "[f]inancial sanctions to compensate Plaintiffs for the significant attorneys' fees accrued during the discovery dispute process, which included willful defiance of Judge Daly's orders by Freeland and delay at every opportunity, are proportional and called for in this case."

**ANSWER:    Lorenzini Defendants admit that Paragraph 69 accurately recites portions of Judge Reagan's January 7, 2019, Memorandum & Order and those recitations speak for themselves.**

70.     The pattern of discovery non-compliance and misconduct by Defendants lead to an additional "death penalty" motion for sanctions against all of Defendants' co-clients, including Garber and Helgoe, that sought among other things an order of default.

**ANSWER:   Lorenzini Defendants are without knowledge and information sufficient to form a belief about the truth of the allegations in Paragraph 70.**

71.     Defendants further failed to comply with expert discovery deadlines. The *Corcoran* Litigation plaintiffs disclosed their damages expert who was prepared to opine that the plaintiffs suffered in excess of $5,000,000 in damages. Despite having a deadline to do so, Defendants never disclosed an expert in response, never field a *Daubert* challenge to the expert's opinions, and failed to disclose to Garber and Helgoe the risks and negative implications of failing to disclose a damages expert or challenging the plaintiffs' damages expert.

**ANSWER:   Lorenzini Defendants admit that the plaintiffs in the Corcoran Litigation disclosed a damages expert. Lorenzini Defendants are without knowledge and information sufficient to form a belief about the truth of the remaining allegations of Paragraph 71.**

72.     As a direct and proximate result of Defendants' failures Defendants left Garber and Helgoe as the sole remaining target defendants having to defend a case unprepared for trial, with a pattern of discovery failures and noncompliance, a pending "death penalty" motion based on Defendants' discovery misconduct, and an unrebutted claim of over $5,000,000 in damages.

**ANSWER:   Paragraph 72 contains legal conclusions to which no response is required. To the extent a response is required, Lorenzini Defendants state that they**

**are without knowledge and information sufficient to form a belief about the truth of**

**the allegations contained in Paragraph 72.**

73.     In addition to the inadequate conflict disclosures and the taking of direction

from Robert Corcoran mentioned herein, Defendants failed to adequately communicate

with Garber, and hardly ever communicated with Helgoe, about important matters

implicating their respective defenses, including but not limited to their:

a)     Failures to seek and obtain a nominal settlement of Garber and Helgoe given Garber's and Helgoe's lack of knowledge and involvement and their ability to offer cooperation in the claims against the target defendant, Robert Corcoran.

b)     Failures to seek or obtain discovery concerning Garber and Helgoe's lack of involvement in the conduct alleged in the *Corcoran* Litigation which would have established their defenses and provided grounds for an early exit from the case;

c)     Failures to elicit and preserve testimony from Robert Corcoran and other co-clients at their depositions that would have limited or otherwise absolved Garber and Helgoe's of liability;

d)     Refusals to turn over Robert Corcoran's laptop and documents despite multiple requests and court orders compelling its production;

e)     Failures to determine or disclose to Garber and Helgoe and the Court that Robert Corcoran had "wiped" the laptop until the May 4, 2018 hearing on plaintiffs' the Motion to Compel;

f)     Representations to opposing counsel and the Court during the May 4, 2018 hearing that notwithstanding the "wipe" there was no harm because a backup of the deleted file existed when in fact no such backup existed;

g)     Tendering Corcoran's laptop for review and reconstruction by a third-party in direct violation of the Court's May 7, 2018 order that a neutral third party review the laptop, thereby tampering with electronic evidence;

h)     Failures to provide supplemental responses to interrogatories and requests for production in violation of the court's orders;

i)     Employment of delay tactics to avoid turning over otherwise responsive discovery and failed to produce Robert Corcoran's financial documents in violation of the court's May 7, 2018 order;

j)     Implementation of an overarching defense strategy of forcing the *Corcoran* Litigation plaintiffs to spend as much money as possible in hopes of forcing them to settle or drop the case due to an inability to pay plaintiffs' counsel;

k)     Failures to timely disclose a damages expert; and

l)     Failures to file a *Daubert* motion to challenge the opinions of the *Corcoran* Litigation plaintiffs' damages expert within the court's deadline for such motions.

**ANSWER:     Lorenzini Defendants are without knowledge and information sufficient to form a belief about the truth of the allegations contained in Paragraph 73, inclusive of sub-paragraphs (a)-(l).**

### Garber & Helgoe are Forced to Settle

74.     In October 2018, Garber and Helgoe retained new counsel to represent them in the *Corcoran* Litigation. As a result, they incurred over $130,000 in additional fees and costs in an attempt to mitigate the harm caused by Defendants and advance their defenses. Given the potentially devastating exposure created by Defendants' failures, and to prevent further losses, Garber and Helgoe ultimately agreed to settle the *Corcoran* Litigation for a sum far greater than they would have had to pay if they had been represented by independent, competent counsel.

**ANSWER:     Lorenzini Defendants admit that Garber and Helgoe retained new counsel to represent them in the Corcoran Litigation in October 2018. Lorenzini Defendants are without knowledge and information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 74.**

75.     But for Defendants' negligence, the Garber and Helgoe would have resolved the *Corcoran* Litigation, either through dismissal, a defense verdict at trial or, alternatively, in a settlement for an amount substantially less than the sums it paid, and it would not have incurred as much in counsel fees in defending the *Corcoran* Litigation.

**ANSWER:     Lorenzini Defendants state that the allegations of Paragraph 75 are legal conclusions to which no response is required. To the extent a response is required, Lorenzini Defendants deny the allegations of Paragraph 75.**

**COUNT I – LEGAL MALPRACTICE**
**GARBER v. RONALD N. LORENZINI**

76.     Plaintiff Garber realleges and incorporates by reference Paragraphs 1-75 as though fully set forth herein.

**ANSWER:     Ronald Lorenzini restates and incorporates herein by reference Lorenzini Defendants' answers to the allegations in Paragraphs 1-75 of the Complaint as though fully set forth herein.**

77.     Plaintiff Garber retained Ronald N. Lorenzini in 2017 to provide a legal defense in the *Corcoran* Litigation. Defendant Ronald N. Lorenzini was an agent and authorized representative of Lorenzini & Associates, Ltd. and the attorney in charge of Garber's defense. As such, he owed Garber the duty of care to possess the knowledge, skill and care that well-qualified attorneys would ordinarily possess and apply under similar circumstances, in order to properly advise, take action on behalf of, and protect his legal rights and interests.

**ANSWER:     Ronald Lorenzini denies that he was the attorney in charge of Garber's defense. By way of further answer, Ronald Lorenzini states that the**

**remaining allegations of Paragraph 77 are legal conclusions for to which no response**

**is required.**

78.     In breach of the aforesaid duty of care, Defendant Ronald N. Lorenzini was guilty of one or more of the following negligent acts and/or omissions:

a)    Failed to provide Garber with the necessary disclosures with respect to the conflict of interest that existed by way of the joint representation;

b)    Failed to obtain Garber's informed consent to the joint and conflicted representation;

c)    Failed to advise Garber of the risks attendant to the joint and conflicted representation;

d)    Undertook a joint and conflicted representation and failed to advise Garber to retain independent counsel;

e)    Favored the interests of the Corcorans over the interests of Garber by undertaking the joint and conflicted representation and negotiating a fee-split agreement that benefited the Corcorans, allowed them to control the defense, and kept Garber in the case in order to protect the Corcorans from liability and attorneys' fees rendered in defense of the Corcorans;

f)    Failed to file contribution or indemnity claims on the behalf Garber against the Corcorans;

g)    Failed to timely, properly or adequately respond to discovery requests;

h)    Violated or failed to comply with numerous court orders and deadlines;

i)    Failed to file a *Daubert* motion against the plaintiffs' damages expert within the court ordered deadline to do so;

j)    Failed to disclose a damages expert;

k)    Failed to properly supervise other attorneys participating in Garber's defense, including Defendant Eric A. Freeland; and

l)    Was otherwise careless and negligent in the defense of Garber.

**ANSWER:**   Ronald Lorenzini answers that the allegations of Paragraph 78 contain legal conclusions to which no response is required. To the extent a response is required, Ronald Lorenzini states that he is without knowledge and information sufficient to form a belief about the truth of the allegations of Paragraph 78, inclusive of sub-paragraphs (a)-(l).

79.     As a direct and proximate result of the foregoing, *inter alia*, Garber was not promptly dismissed or settled out of the *Corcoran* Litigation and instead he became mired in discovery and motion practice, mainly involving Corcoran's conduct and interests, discovery was not elicited necessary for Garber's defense, claimed damages were unchallenged and unrebutted, sanctions were entered, credibility before the court was undermined, a pattern of discovery noncompliance and failings caused by Defendants and attributed Garber was established, all of which forced Garber to resolve the *Corcoran* Litigation for an amount in excess of that justified by the facts and evidence.

**ANSWER:**   Ronald Lorenzini answers that the allegations of Paragraph 79 contain legal conclusions to which no response is required. To the extent a response is required, Ronald Lorenzini states that he is without knowledge and information sufficient to form a belief about the truth of the allegations of Paragraph 79.

80.     But for Ronald N. Lorenzini's negligence, Garber would have resolved the plaintiffs' claims, either through dismissal, a defense verdict at trial or, alternatively, in settlement, for an amount substantially less than the sums he paid, and he would not have incurred as much in counsel fees in defending the *Corcoran* Litigation.

**ANSWER:   Ronald Lorenzini is without knowledge and information sufficient to form a belief about the truth of the allegations contained in Paragraph 80.**

81.   Due to the conflict of interest that existed at the outset of the representation, Ronald N. Lorenzini was prohibited from undertaking Garber's representation. Therefore, Garber is entitled to disgorgement for any fees paid to Ronald N. Lorenzini during the conflicted representation.

**ANSWER:   Ronald Lorenzini answers that the allegations of Paragraph 79 contain legal conclusions to which no response is required. To the extent a response is required, Ronald Lorenzini denies the allegations of Paragraph 79.**

**COUNT II – LEGAL MALPRACTICE**
**GARBER v. ERIC A. FREELAND**

**The allegations of Count II are not directed at Lorenzini Defendants. As such, Lorenzini Defendants offer no response to the same.**

**COUNT II – LEGAL MALPRACTICE**
**GARBER v. LORENZINI & ASSOCIATES, LTD.**

88.   Plaintiff Garber realleges and incorporates by reference Paragraphs 1-87 as though fully set forth herein.

**ANSWER:   Lorenzini & Associates restate and incorporate herein by reference Lorenzini Defendants' answers to the allegations in Paragraphs 1-75 – and Ronald Lorenzini's answers to the allegations in Paragraph 76-87 – of the Complaint as though fully set forth herein.**

89.   Plaintiff Garber retained Defendant Lorenzini & Associates, Ltd. in 2017 to provide a legal defense in the *Corcoran* Litigation. At all times relevant, Defendant Ronald

Lorenzini, Jr and Eric Freeland were authorized agents of Lorenzini & Associates, Ltd., and all of Defendants Freeland's and Lorenzini's acts alleged herein were within said agency and were thereby the acts of Defendant Lorenzini & Associates, Ltd.

**ANSWER**:   **Admit.**

90.    But for Defendants' negligence, Garber would have resolved the plaintiffs' claims, either through dismissal, a defense verdict at trial or, alternatively, in settlement, for an amount substantially less than the sums she paid, and she would not have incurred as much in counsel fees in defending the *Corcoran* Litigation.

**ANSWER**:   **Lorenzini & Associates answer that the allegations of Paragraph 90 contain legal conclusions to which no response is required. To the extent a response is required, Lorenzini & Associates states that it without knowledge and information sufficient to form a belief about the truth of the allegations of Paragraph 90.**

91.    Due to the conflict of interest that existed at the outset of the representation, Lorenzini & Associates, Ltd. was prohibited from undertaking Garber's representation. Therefore, Garber is entitled to disgorgement for any fees paid to Lorenzini & Associates, Ltd. during the conflicted representation.

**ANSWER**:   **Lorenzini & Associates answer that the allegations of Paragraph 91 contain legal conclusions to which no response is required. To the extent a response is required, Lorenzini & Associates deny the allegations of Paragraph 91.**

## COUNT IV – LEGAL MALPRACTICE
## HELGOE v. RONALD N. LORENZINI

92.    Plaintiff Helgoe realleges and incorporates by reference Paragraphs 1-75 as though fully set forth herein.

**ANSWER:**     Ronald Lorenzini restates and incorporates herein by reference Lorenzini Defendants' answers to the allegations in Paragraphs 1-75 of the Complaint as though fully set forth herein.

93.     Plaintiff Helgoe retained Ronald N. Lorenzini in 2017 to provide a legal defense in the *Corcoran* Litigation. Defendant Ronald N. Lorenzini was an agent and authorized representative of Lorenzini & Associates, Ltd. and was the attorney in charge of the Helgoe's defense. As such, he owed Helgoe the duty of care to possess the knowledge, skill and care that well-qualified attorneys would ordinarily possess and apply under similar circumstances, in order to properly advise, take action on behalf of, and protect her legal rights and interests.

**ANSWER:**     Ronald Lorenzini denies that he was the attorney in charge of Helgoe's defense. By way of further answer, Ronald Lorenzini states that the remaining allegations of Paragraph 93 are legal conclusions for to which no response is required.

94.     In breach of the aforesaid duty of care, Defendant Ronald N. Lorenzini was guilty of one or more of the following negligent acts and/or omissions:

a)      Failed to provide Helgoe with the necessary disclosures with respect to the conflict of interest that existed by way of the joint representation;

b)      Failed to obtain Helgoe's informed consent to the joint and conflicted representation;

c)      Failed to advise Helgoe of the risks attendant to the joint and conflicted representation;

d)      Undertook a joint and conflicted representation and failed to advise Helgoe to retain independent counsel;

e)      Favored the interests of the Corcorans over the interests of Helgoe by undertaking the joint and conflicted representation and negotiating a fee-split agreement that benefited the Corcorans, allowed them to control the defense, and kept Helgoe in the case in order to protect the Corcorans from liability and attorneys' fees rendered in defense of the Corcorans;

f)      Failed to file contribution or indemnity claims on the behalf Helgoe against the Corcorans;

g)      Failed to timely, properly or adequately respond to discovery requests;

h)      Violated or failed to comply with numerous court orders and deadlines;

i)      Failed to file a *Daubert* motion against the plaintiffs' damages expert within the court ordered deadline to do so;

j)      Failed to disclose a damages expert;

k)      Failed to properly supervise other attorneys participating in Helgoe's defense, including Defendant Eric A. Freeland; and

l)      Was otherwise careless and negligent in the defense of Helgoe.

**ANSWER:      Ronald Lorenzini answers that the allegations of Paragraph 94 contain legal conclusions to which no response is required. To the extent a response is required, Ronald Lorenzini states that he is without knowledge and information sufficient to form a belief about the truth of the allegations of Paragraph 94, inclusive of sub-paragraphs (a)-(l).**

95.      As a direct and proximate result of the foregoing, *inter alia*, Helgoe was not promptly dismissed or settled out of the *Corcoran* Litigation and instead she became mired in discovery and motion practice, mainly involving Corcoran's conduct and interests, discovery was not elicited necessary for Helgoe's defense, claimed damages were unchallenged and unrebutted, sanctions were entered, credibility before the court was

undermined, a pattern of discovery noncompliance and failings caused by Defendants and attributed Helgoe was established, all of which forced Helgoe to resolve the *Corcoran* Litigation for an amount in excess of that justified by the facts and evidence.

**ANSWER:    Ronald Lorenzini answers that the allegations of Paragraph 95 contain legal conclusions to which no response is required. To the extent a response is required, Ronald Lorenzini states that he is without knowledge and information sufficient to form a belief about the truth of the allegations of Paragraph 95.**

96.    But for Ronald N. Lorenzini's negligence, Helgoe would have resolved the plaintiffs' claims, either through dismissal, a defense verdict at trial or, alternatively, in settlement, for an amount substantially less than the sums she paid, and she would not have incurred as much in counsel fees in defending the *Corcoran* Litigation.

**ANSWER:    Ronald Lorenzini is without knowledge and information sufficient to form a belief about the truth of the allegations contained in Paragraph 96.**

97.    Due to the conflict of interest that existed at the outset of the representation, Ronald N. Lorenzini was prohibited from undertaking Helgoe's representation. Therefore, Helgoe is entitled to disgorgement for any fees paid to Ronald N. Lorenzini during the conflicted representation.

**ANSWER:    Ronald Lorenzini answers that the allegations of Paragraph 97 contain legal conclusions to which no response is required. To the extent a response is required, Ronald Lorenzini denies the allegations of Paragraph 97.**

### COUNT V – LEGAL MALPRACTICE
### HELGOE v. ERIC A. FREELAND

The allegations of Count V are not directed at Lorenzini Defendants. As such, Lorenzini Defendants offer no response to the same.

**COUNT VI – LEGAL MALPRACTICE**
**HELGOE v. LORENZINI & ASSOCIATES, LTD.**

104.    Plaintiff Helgoe realleges and incorporates by reference Paragraphs 1-75 and Paragraphs 92-103 as though fully set forth herein.

**ANSWER**:  **Lorenzini & Associates restate and incorporate herein by reference its answers to the allegations in Paragraphs 1-75 and 92-103 of the Complaint as though fully set forth herein.**

105.    Plaintiff Helgoe retained Defendant Lorenzini & Associates, Ltd. in 2017 to provide a legal defense in the *Corcoran* Litigation. At all times relevant, Defendant Ronald Lorenzini, Jr and Eric Freeland were authorized agents of Lorenzini & Associates, Ltd., and all of Defendants Freeland's and Lorenzini's acts alleged herein were within said agency and were thereby the acts of Defendant Lorenzini & Associates, Ltd.

**ANSWER**:    **Admit.**

106.    But for Defendants' negligence, Helgoe would have resolved the plaintiffs' claims, either through dismissal, a defense verdict at trial or, alternatively, in settlement, for an amount substantially less than the sums she paid, and she would not have incurred as much in counsel fees in defending the *Corcoran* Litigation.

**ANSWER**:    **Lorenzini & Associates answer that the allegations of Paragraph 106 contain legal conclusions to which no response is required. To the extent a response is required, Lorenzini & Associates states that it is without knowledge and information sufficient to form a belief about the truth of the allegations of Paragraph 106.**

107.    Due to the conflict of interest that existed at the outset of the representation, Lorenzini & Associates, Ltd. was prohibited from undertaking Helgoe's representation. Therefore, Helgoe is entitled to disgorgement for any fees paid to Lorenzini & Associates, Ltd. during the conflicted representation.

**<u>ANSWER</u>:    Lorenzini & Associates answer that the allegations of Paragraph 107 contain legal conclusions to which no response is required. To the extent a response is required, Lorenzini & Associates states it is without knowledge and information sufficient to form a belief about the truth of the allegations of Paragraph 107.**

## <u>AFFIRMATIVE DEFENSES</u>

Defendants, Lorenzini & Associates and Ronald Lorenzini (collectively, "Lorenzini Defendants") by and through their attorneys, Wilson Elser Moskowitz Edelman and Dicker LLP, and for their Affirmative Defenses, state as follows:

## <u>FIRST AFFIRMATIVE DEFENSE</u>

### Proximate Cause: Superseding, Intervening Counsel

1.    Plaintiffs hired Lorenzini Defendants to defend their interests in the underlying Corcoran Litigation.[1]

2.    Plaintiffs allege, *inter alia*, that Lorenzini Defendants were negligent in their defense of the Corcoran Litigation on behalf of Plaintiffs (in their role as Defendants in the Corcoran Litigation) because "[d]espite having a deadline to do so, [Lorenzini]

---

[1] Corcoran Consulting, LLC and B& B Mills Consulting, Inc. ("Corcoran Plaintiffs") v. Cremservices, LLC a/k/a Consolidated Real Estate Management Services, d/b/a Monycall.com; Robert Corcoran; Brenda Corcoran; Real Estate Learning Institute, Inc.  (a dissolved Illinois corporation); Real Estate Learning Institute, Inc. (a Florida corporation); Ronald Garber; Sherry Helgoe; Nancy Mueller: Laura Kombrink and Hannah Mullenix, pending in the United States District Court for the Southern District of Illinois under case no. 3:17-cv-803 (the "Corcoran Litigation.")

Defendants never disclosed an expert in response [to Plaintiffs' expert in the Corcoran Litigation], neve filed a *Daubert* challenge to the expert's opinions…" [*See*, D.E. #1, ¶71]. As a result of this alleged conduct by Lorenzini Defendants, Plaintiffs were allegedly forced to settle the Corcoran Litigation for an amount greater than they would have paid otherwise.

3.      On October 2, 2018, Lorenzini Defendants were granted leave to withdraw as counsel for Garber and Helgoe in the Corcoran Litigation.

4.      On October 17, 2018, attorneys Clinton Cameron and James J. Sanders filed Appearances on behalf of Garber and Helgoe in the Corcoran Litigation.

5.      On October 18, 2018, the Corcoran Litigation was set for trial to begin on October 7, 2019.

6.      Plaintiffs did not incur any damages related to Lorenzini Defendants' alleged malpractice with respect to expert discovery in the Corcoran Litigation until Plaintiffs settled out of the Corcoran Litigation, on or around March 20, 2019.

7.      Plaintiffs allege that but for Lorenzini Defendants' alleged malpractice, Plaintiffs would have settled for a lesser amount in the Corcoran Litigation, or would have prevailed at a trial.

8.      However, Attorneys Cameron and Sanders could have remedied Lorenzini Defendants' alleged malpractice relative to expert discovery in the Corcoran Litigation until the case was fully dismissed on March 27, 2019.

9.      Attorneys Cameron and Sanders failed to take remedial measures necessary on behalf of Plaintiffs while they were Defendants in the Corcoran Litigation.

10. That if the allegations contained in Plaintiffs' Complaint are true, then the action (or, inaction) of Attorneys Cameron and Sanders was an intervening proximate cause of the injuries and damages alleged and Plaintiffs' claims are barred in whole or in part.

## SECOND AFFIRMATIVE DEFENSE
### Failure to Mitigate Damages

1. That if the allegations contained in Plaintiffs' Complaint are true, Plaintiffs were under a duty to mitigate their potential damages.

2. Despite the aforementioned duty, Plaintiffs failed to instruct their subsequent counsel (Clinton Cameron and James Sanders, appearing for Garber and Helgoe in the Corcoran Litigation on October 17, 2018), to mitigate their damages through seeking leave to challenge the Corcoran Plaintiffs' expert opinion in the Corcoran Litigation such that Garber's and Helgoe's interests would be adequately protected at any trial in the Corcoran Litigation.

3. As a direct and proximate result of Plaintiffs' acts or omissions, Plaintiffs have failed to mitigate the damages alleged in the Complaint.

4. In the event the jury finds the Lorenzini Defendants at fault for the damages stemming from the injuries allegedly arising out of the subject occurrence, liability that the Lorenzini Defendants expressly deny, then Plaintiffs' recovery against the Lorenzini Defendants shall be reduced proportionate with the damages sustained due to Plaintiffs' own failure.

## THIRD AFFIRMATIVE DEFENSE
### Failure to State a Claim

1.      Plaintiff's Complaint fails to state a claim against Lorenzini Defendants upon which relief can be granted.

## ADDITIONAL AFFIRMATIVE DEFENSES

Lorenzini Defendants state that these named Affirmative Defenses are based on, and therefore necessarily limited by, the records and information presently recollected and thus far discovered. Lorenzini Defendants therefore reserve the right to assert additional affirmative defenses that are revealed during the course of its investigation of this matter.

WHEREFORE, Defendants, Ronald Lorenzini and Lorenzini & Associates, Ltd., respectfully request this Court enter a judgment be entered in their favor and against the Plaintiffs, and this Court award any such other relief as it deems equitable and just.

Respectfully submitted,

**LORENZINI & ASSOCIATES, LTD.
and RONALD N. LORENZINI, JR.**

/s/ Kimberly E. Blair
*One of Their Attorneys*

Kimberly E. Blair (ARDC #6272934)
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
55 W. Monroe Street, Suite 3800
Chicago, IL 60603
312-704-0550 (T)
Firm No.:  16741

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the above pleading was served on all counsel of record via ECF and e-mail before the hour of 5:00 p.m. this 10th day of March, 2020.

**For Plaintiffs**
Michael C. Bruck
Jessica Lynn Dagley
Spellmire Bruck LLP
One E. Wacker Drive, Suite 2350
Chicago, IL 60601
mcb@spellmirebruck.com
jld@spellmirebruck.com

**For Defendant Freeland**
Anthony G. Barone
Jason W. Jochum
Zach McGourty
Barone Law Group, P.C.
17W635 Butterfield Rd., Suite 145
Oakbrook Terrace, IL 60181
*abarone@baronelawgroup.com*
*jjochum@baronelawgroup.com*
*zmcgourty@baronelawgroup.com*

Respectfully submitted,


By:  /s/ Kimberly E. Blair
      *Attorneys for Defendants Lorenzini &*
      *Associates, Ltd. and Ronald L.*
      *Lorenzini, Jr.*


Kimberly E. Blair (ARDC #6272934)
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
55 W. Monroe Street, Suite 3800
Chicago, IL 60603
312-704-0550 (T)
312-704-1522 (F)