## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RONALD GARBER and SHERRY HELGOE, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 3:20-cv-00025 |
| ) | |
| LORENZINI & ASSOCIATES, LTD., ) | JURY DEMAND |
| RONALD N. LORENZINI, JR., and ERIC A. ) | |
| FREELAND, ) | |
| ) | |
| Defendants. ) | |

## DEFENDANT, ERIC A. FREELAND'S, ANSWER & AFFIRMATIVE DEFENSES TO COMPLAINT FOR LEGAL MALPRACTICE

Defendant ERIC A. FREELAND ("Freeland"), by and through his attorneys, Barone Law Group, P.C., and for his Answer & Affirmative Defenses to the Complaint for Legal Malpractice filed by Plaintiffs, RONALD GARBER ("Garber") and SHERRY HELGOE ("Helgoe") (collectively "Plaintiffs"), states and alleges as follows:

1. This is an action for legal malpractice to recover damages suffered at the hands of the attorneys who undertook to protect the interests of Garber and Helgoe.

**ANSWER:**   Freeland ADMITS the current action alleges legal malpractice. Freeland DENIES any legal malpractice and DENIES he was the cause of any damages sustained by Plaintiffs.

2. Instead of protecting Garber's and Helgoe's individual interests, Defendants undertook conflicted joint representation of Garber and Helgoe and six other separate defendants named in a suit, that largely involved other clients' alleged violations of non-disclosure, non-solicitation, non-competition and independent consulting agreements captioned, *Corcoran Consulting, LLC and B& B Mills Consulting, Inc. v. Cremservices, LLC a/k/a Consolidated Real Estate Management Services, d/b/a Monycall.com; Robert Corcoran; Brenda Corcoran; Real Estate Learning Institute, Inc. (a dissolved Illinois corporation); Real Estate Learning Institute, Inc. (a Florida corporation); Ronald Garber; Sherry Helgoe; Nancy Mueller: Laura Kombrink and Hannah Mullenix*, pending in the United States District Court for the Southern District of Illinois under case no. 3:17-cv-803 (the "*Corcoran* Litigation.").

**ANSWER:**   Freeland ADMITS to representing Plaintiffs and six other defendants for certain periods in the *Corcoran* Litigation. Freeland DENIES the remaining allegations in Paragraph 2.

3.     Defendants' negligence in, *inter alia*, undertaking joint representation of Garber and Helgoe on one hand, and the six other named defendants who had conflicting interests, on the other hand, and their failures to properly defend, preserve evidence, handle discovery and timely disclose a damages expert, severely impaired Garber's and Helgoe's defense of the *Corcoran* Litigation. As a result, Garber and Helgoe were placed in the predicament of having to pay substantial sums to defend and settle a case that would have otherwise been dismissed, tried to a successful defense verdict or resolved for a far lesser sum.

**ANSWER:**     Freeland DENIES each and every allegation in Paragraph 3.

## THE PARTIES

4.     Plaintiff Ronald Garber is an individual residing in the City of Yorba Linda, County of Orange, in the State of California.

**ANSWER:**     Freeland ADMITS the allegations in Paragraph 4.

5.     Plaintiff Sherry Helgoe is an individual residing in the City of Yorba Linda, County of Orange, in the State of California.

**ANSWER:**     Freeland ADMITS the allegations in Paragraph 5.

6.     Defendant Lorenzini & Associates, Ltd. is a law firm organized as an Illinois professional corporation with its principal place of business in Plainfield, Illinois, Kendall County.

**ANSWER:**     Freeland ADMITS the allegations in Paragraph 6, except to DENY that Plainfield, Illinois is located in Kendall County, Illinois.

7.     Defendant Ronald N. Lorenzini, Jr. is a resident of the State of Illinois and was, at all times material to this Complaint, an attorney licensed to practice law, and a partner with Lorenzini & Associates, Ltd. in its Plainfield, Illinois office located in Kendall County, Illinois.

**ANSWER:**     Freeland ADMITS the allegations in Paragraph 7, except to DENY that Plainfield, Illinois is located in Kendall County, Illinois.

8.     Defendant Eric A. Freeland ("Freeland") is a resident of the State of Illinois and was, at all times material to this Complaint, an attorney licensed to practice law, and an employee and agent of Lorenzini & Associates, Ltd. in its Plainfield, Illinois office located in Kendall County, Illinois.

**ANSWER:**     Freeland DENIES he is a resident of the State of Illinois and DENIES Plainfield, Illinois is located in Kendall County, Illinois.  Freeland ADMITS the remaining allegations in Paragraph 8.

## JURISDICTION & VENUE

9.     Because Garber and Helgoe are citizens of the State of California and Defendants are citizens of the State of Illinois, there is complete diversity of citizenship. The matter in controversy in this case exceeds the sum or value of $75,000.00, exclusive of interest and costs. Therefore, this action is within this Court's original jurisdiction under 28 U.S.C. § 1332.

**ANSWER:**     Freeland ADMITS that Plaintiffs are citizens of the State of California and that

Defendants Lorenzini & Associates, Ltd. and Ronald N. Lorenzini, Jr. are citizens of the State of

Illinois.  Freeland DENIES he is a citizen of the State of Illinois.  Freeland lacks knowledge or

information sufficient to form a belief about the truth of the remaining allegations in Paragraph 9.

10.     Venue is proper under 28 U.S.C. § 1391(b)(2) in that this action has been brought within the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred and within which each Defendant is subject to personal jurisdiction.

**ANSWER:**     The allegations of Paragraph 10 are a legal conclusion to which no response is

required.

## FACTS
### The Underlying *Corcoran* Litigation

11.     In 1989, Robert Corcoran founded Corcoran Consulting, LLC ("Corcoran Consulting"), a business that performed real estate coaching and consulting services. As of November 30, 2015, B&B Mills owned 23.1% of the membership interests in Corcoran Consulting and Robert Corcoran, through RELI, owned the other 76.9%.

**ANSWER:**     Freeland  DENIES  Robert  Corcoran  founded  Corcoran  Consulting,  LLC

("Corcoran Consulting") in 1989 and DENIES that as of November 30, 2015 Robert Corcoran

owned a 76.9% membership interest in Corcoran Consulting.  Freeland ADMITS the remaining

allegations in Paragraph 11.

12.     On November 30, 2015, B&B Mills and RELI and/or Robert Corcoran entered into a Membership Interest Purchase Agreement (the "Purchase Agreement"), whereby B&B Mills purchased the remaining membership interests in Corcoran Consulting, LLC ("Corcoran Consulting") from Robert Corcoran and/or RELI.

**ANSWER:**     Freeland ADMITS the allegations in Paragraph 12.

13.     As part of the Purchase Agreement, Robert Corcoran entered into a non-disclosure and non-solicitation agreement (the "NDA") for a one-year period whereby he agreed, *inter alia*,

3

not to use Corcoran Consulting information, conduct competing business, or solicit or recruit employees.

**ANSWER:**   Freeland ADMITS that, as part of the Purchase Agreement, Robert Corcoran entered into a "Non-Disclosure, Non-Competition and Non-Solicitation Agreement" ("NDA") with Corcoran Consulting, LLC.  Freeland avers that the above cited "Purchase Agreement" and "NDA" are the best evidence of those agreements and DENIES any allegation in Paragraph 13 that is inconsistent with the "Purchase Agreement" and "NDA."

14.     After the entry into the Purchase Agreement, Robert Corcoran continued to work for Corcoran Consulting as an independent contractor pursuant to an Independent Consulting Agreement whereby he agreed not to reveal confidential information or trade secrets belonging to Corcoran Consulting.

**ANSWER:**   Freeland DENIES the allegations in Paragraph 14, except to admit that (i) as part of the Purchase Agreement, Corcoran Consulting, LLC and Robert Corcoran entered into an Independent Consultant Agreement in which Robert Corcoran agreed, among other things, not to reveal confidential information or trade secrets belonging to Corcoran Consulting, LLC, and (ii) after entry into the Purchase Agreement, Robert Corcoran continued to work for Corcoran Consulting, LLC as an independent contractor.

15.     Garber has for years participated and worked in the real estate industry. Garber has also known Robert Corcoran since the 1990's, as both worked in the real estate industry, Garber had been a client of Corcoran's, and at times they worked together and developed materials for use in their respective real estate businesses. As a client of Corcoran's Garber was granted permission to use certain Corcoran materials.

**ANSWER:**   Freeland ADMITS the allegations in Paragraph 15.

16.     Helgoe works as a marriage and family therapist, college professor, and is married to Garber.

**ANSWER:**   Freeland ADMITS the allegations in Paragraph 16.

17.     In and around 2016, Corcoran approached Garber concerning the formation of a business to promote their specific skills in the real estate industry, and they agreed to and did form CREMServices, LLC.

**ANSWER:**   Freeland DENIES the allegations in Paragraph 17, except to admit that in 2016 Robert Corcoran, Garber and others agreed to and did form CREMServices, LLC, a Florida limited liability company.

18.   The documents that created CREMServices reflected its members to be Garber, Helgoe, Robert Corcoran and his wife Brenda Corcoran. However, at relevant times, no operating agreement was entered into for CREMServices.

**ANSWER:**   Freeland ADMITS the documents that created CREMServices reflected its members to be Garber, Helgoe, Robert Corcoran and his wife, Brenda Corcoran.  Freeland lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 18.

19.   The inclusion of Helgoe on the articles of incorporation for the formation of CREMServices was Helgoe's only involvement in CREMServices and she thereafter did not participate in or have an ownership interest in the business in any manner.

**ANSWER:**   Freeland DENIES the allegations in Paragraph 19.

20.   At the time of the formation of CREMServices Robert Corcoran was still working in and providing services through Corcoran Consulting.

**ANSWER:**   Freeland ADMITS the allegations in Paragraph 20.

21.   Although Garber was aware that Bubba Mills had purchased Robert Corcoran's business, he was not informed nor aware of any contractual undertakings Robert Corcoran had made with Mills, including the fact Corcoran had sold his business to Mills for $2,700,000 and the sale included confidentiality, non-disclosure, non-competition, non-solicitation and independent contractor agreements. Instead, Garber believed Corcoran had the authority to use and transmit to Garber the information possessed by Corcoran.

**ANSWER:**   Freeland ADMITS Garber was aware Bubba Mills had purchased Robert Corcoran's business.  Freeland lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 21.

22.   In the course of starting the CREMServices business, CREMServices hired Nancy Mueller ("Mueller") who was at one time previously employed by Corcoran Consulting as a bookkeeper. While a bookkeeper with Corcoran Consulting Mueller entered into a Bookkeeper Position Agreement, in which Mueller agreed to not engage in other business activity, to devote her full time and attention to Corcoran Consulting, and further agreed to not disclose or reveal

confidential information or trade secrets. Mueller also entered a Non-Compete Agreement with Corcoran Consulting, wherein Mueller agreed to not disclose customer lists, databases, marketing systems, trade secrets and other confidential material, and to not do business or consulting that would create competition with Corcoran Consulting for a period of 24 months after leaving her position.

**ANSWER:**   Freeland ADMITS the allegations in Paragraph 22.

23.   In the course of starting the CREMServices business, in February 2017, Robert Corcoran advised his assistant, Nancy Mullenix ("Mullenix"), who at the time worked at Corcoran Consulting, to provide Garber with certain information in Corcoran's possession. Mullenix and Corcoran Consulting entered into a Non-Disclosure Agreement in 2016, in which Mullenix agreed to not disclose or reveal confidential information or trade secrets.

**ANSWER:**   Freeland lacks knowledge or information sufficient to form a belief about the truth

of the remaining allegations in Paragraph 23.

24.   Garber was unaware of Mueller's and Mullenix' agreements with Corcoran Consulting and also did not believe the information to be proprietary or that there was any restriction on the use or transmission of the information because, among other things, the information included materials that Garber and Corcoran had developed over the years while working in the real estate education and consulting industry, it was generally publicly available, or it was information Garber had permission to use as a client of Corcoran.

**ANSWER:**   Freeland ADMITS that the Corcoran Consulting documents provided to Garber

included information and documents that were generally publicly available.   Freeland lacks

knowledge or information sufficient to form a belief about the truth of the remaining allegations

in Paragraph 24.

25.   In response to Robert Corcoran's request, Garber expected to receive only certain specific documents he and Corcoran had previously developed or worked on together. Instead, Mullenix transmitted to Garber documents much greater than he needed or wanted through links to the "Corcoran Consulting Computer Folder."

**ANSWER:**   Freeland DENIES the allegations in Paragraph 25, except to admit that in response

to an e-mail from Garber to Mullinex requesting "access to the Corcoran Consulting Computer

Folder," Mullinex provided Garber with a link to the Corcoran Consulting Computer Folder.

26.   At all times relevant, Garber was assured by Robert Corcoran that CREMServices had a right to use Corcoran Consulting documents and information.

**ANSWER:**    Freeland DENIES the allegations in Paragraph 26.

27.    On July 27, 2017, Corcoran Consulting and B&B Mills filed suit against CREMServices, Ronald Garber, Sherry Helgoe, Nancy Mueller, Laura Kombrink, and Hannah Mullenix in the *Corcoran* Litigation.

**ANSWER:**    Freeland ADMITS the allegations in Paragraph 27, except to DENY that Corcoran

Consulting, LLC and B&B Mills Consulting, Inc. filed suit against Hannah Mullenix on July 27,

2017.

28.    The complaint in the *Corcoran* Litigation alleged a number of claims related to Robert Corcoran's alleged breach of the NDA and Independent Consulting Agreements that centered around his wrongful acquisition of Corcoran Consulting documents and/or information for use by CREMServices. Included was Mueller's providing to Garber the link to Corcoran Consulting documents as well as Mueller's unauthorized downloading of other information, Mullinex's copying of Corcoran Consulting's Top Producer database to her home computer, and Mullinex's work for CREMServices while still employed by Corcoran Consulting. The complaint further detailed Robert Corcoran's, Mueller's and Mullinex's additional use and duplication of Corcoran Consulting materials and the breaches of their agreements with Corcoran Consulting.

**ANSWER:**    Freeland DENIES the allegations in Paragraph 28, except to admit the complaint

filed in the *Corcoran*  Litigation on July 27, 2017 alleged a number of claims related to Robert

Cor[oraran's alleged breach of his NDA with Corcoran Consulting and Mueller's alleged

downloading, copying and distributing of unidentified Corcoran Consulting information in

violation of her agreements with Corcoran Consulting.   Freeland avers that the referenced

"complaint in the *Corcoran* Litigation" is the best evidence of the claims alleged therein and

DENIES any allegation in Paragraph 28 that is inconsistent with that complaint.  Freeland DENIES

that Paragraph 28 summarizes all of the relevant allegations involving the Plaintiffs.

29.    Helgoe and Garber had no contractual undertakings with the *Corcoran* Litigation plaintiffs and did not know of Corcoran's, Mueller's and Mullinex's contractual undertakings and breaches. Nevertheless, they were named as co-conspirators and co-actors in the acts committed by the other named defendants.

**ANSWER:**   Freeland ADMITS that Helgoe & Garber were named as co-conspirators and co-

actors in the acts committed by other named plaintiffs.  Freeland lacks knowledge or information

sufficient to form a belief about the truth of the remaining allegations in Paragraph 29.

    30.   The complaint in the *Corcoran* Litigation sought to recover monetary damages from all the defendants for conspiracy to violate the Computer Fraud & Abuse Act 18 U.S. C. § 1030(b), violation of the Illinois Trade Secrets Act 765 ILCS § 1065/2, tortious interference, and civil conspiracy, among other claims.

**ANSWER:**   Freeland ADMITS the allegations in Paragraph 30.

### Defendants' Joint Conflicted Representation

    31.   To address and defend the suit, Garber and Helgoe sought out representation and consulted with Defendants. Defendants proposed representing all named defendants in the suit, except for Mueller and Mullenix. Defendants, however, did not make any individualized assessment of the claims against Garber and Helgoe or advise them of the implications or risks of the proposed joint representation.

**ANSWER:**   Freeland ADMITS Plaintiffs sought out representation and consulted with

Lorenzini & Associates, Ltd. to represent them in the *Corcoran* Litigation.  Freeland DENIES the

remaining allegations in Paragraph 31.

    32.   Among other things, Defendants failed to consider the implications of the fact that Garber and Helgoe had no knowledge of the agreements entered into by Robert Corcoran, Mueller, and Mullinex, agreements Robert Corcoran, Mueller and Mullinex were obviously aware of. As a result, Garber and Helgoe were in a far different position from the other named defendants, not only because they did not enter into the subject agreements, but also because many of the claims included an intent element and their lack of knowledge showed a lack of intent.

**ANSWER:**   Freeland lacks knowledge or information sufficient to form a belief about the truth

as to whether Garber and Helgoe had knowledge of the agreements entered into by Corcoran,

Mullenix, and Mueller.  Freeland DENIES that he failed to consider conflict of interest issues in

representing Plaintiffs and DENIES the remaining allegations in Paragraph 32.

    33.   Defendants also failed to consider or advise Garber and Helgoe that a joint representation with the other defendants would negatively impact their particular and individual defenses to the claims.

**ANSWER:**   Freeland DENIES he failed to consider whether a joint representation would negatively impact Plaintiffs and further DENIES the joint representation negatively impacted the Plaintiffs particular and individual defenses to the claims.   Accordingly, Freeland DENIES the remaining allegations in Paragraph 33.

34.     Among other things, a joint representation: supported the complaint's allegations that the parties conspired and acted in concert; prevented Garber and Helgoe from isolating their particular lack of involvement and lack of knowledge in order to effectively and efficiently further their defenses; included Garber and Helgoe in protracted discovery that mainly involved Robert Corcoran and his interests; prevented Garber and Helgoe from filing third-party or cross claims against Robert Corcoran; prevented Garber and Helgoe from vigorously cross examining Robert Corcoran or the other co-clients in order to obtain evidence favorable to Garber and Helgoe and demonstrate their lack of involvement and knowledge; subjected Garber and Helgoe to the risk that other co-clients change counsel which would either require Garber and Helgoe to also change counsel due to the additional conflict created thereby or otherwise hobble their defense as a result.

**ANSWER:**   The allegations of Paragraph 34 are legal and factual conclusions to which no response is required.   If a response is required, Freeland DENIES Plaintiffs had a "lack of involvement and lack of knowledge" or could have avoided protracted discovery.  Freeland further DENIES that Plaintiffs had viable or meritorious third-party or cross claims against Robert Corcoran.  Freeland further DENIES each and every remaining allegation in Paragraph 34.

35.     Defendants also either knew or failed to consider that Garber's and Robert Corcoran's testimony on a key points was in direct conflict. As an example, Garber maintains that he was unaware the non-disclosure and confidentiality agreements, whereas Robert Corcoran claimed that Garber was aware of them.

**ANSWER:**   Freeland DENIES knowing that Garber and Corcoran's testimony would conflict at the time of the engagement and further DENIES each and every remaining allegation in Paragraph 35.

36.     As a result of the allegations in the complaint, the disparate positions and particular interests of those involved, a concurrent conflict of interest existed that prevented Defendants from jointly representing Garber and Helgoe and the other co-clients or, alternatively, required their informed consent to the representation.

**ANSWER:**   Freeland DENIES the allegations in Paragraph 36.

9

37.     Despite the conflict and the failures to consider and or advise as described Defendants nevertheless proposed and pressured Garber and Helgoe to agree to joint representation. This is demonstrated in Defendant Ronald Lorenzini's August 26, 2017 email to Garber that stated, in part:

> Ron… I talked again with Bob [Corcoran]. Here's where we are...
>
> There are **currently no conflicts existing v. you and any of the other defendants** we are representing (i.e., all but Nancy) and therefore we can represent you as well. Not only will our representation benefit you but **having you on board benefits all**. You understand the issues and with your knowledge and access to documentation, you can assist with the support of the defense. In addition the process is ultimately more efficient and as well **presents a unified stance**.
>
> (emphasis added)

**ANSWER:**     Freeland DENIES a conflict existed and that he failed to consider or advise Plaintiffs as to potential conflict issues involving a joint representation.  Freeland further DENIES pressuring Garber and Helgoe to agree to a joint representation.  Freeland avers the above cited "Defendant Ronald Lorenzini's August 26, 2017 email" is the best evidence of its contents and DENIES any allegation in Paragraph 37 that is not consistent with the email.

38.     Defendant Ron Lorenzini's statement that the were no conflicts was plainly wrong, and certainly one-sided and incomplete as it does not disclose any of the many risks of joint conflicted representation or provide that the necessary informed consent was obtained from Garber and Helgoe.

**ANSWER:**     Freeland DENIES the allegations in Paragraph 38.

39.     Also, given, among other things, Corcoran's and Garber's conflicting positions on the non-compete agreement Defendant Lorenzini's statement that a "unified stance" could be made with joint representation was also plainly wrong.

**ANSWER:**     Freeland DENIES the allegations in Paragraph 39.

40.     Defendant Ron Lorenzini's statement is also an acknowledgement that he sought to represent Garber and Helgoe in order to benefit the co-clients, and yet failed to advise Garber and Helgoe of any of the risks of such representation or obtain their informed consent.

**ANSWER:**     Freeland DENIES the allegations in Paragraph 40.

41.     Defendant Ron Lorenzini's August 26, 2017 email also further demonstrates a conflict through the sharing of fees between the co-clients, and even his taking sides on that conflict to benefit himself and his firm. Specifically, Defendant Ron Lorenzini wrote:

10

As we discussed, Bob [Corcoran] has requested payment of 50% of all fees incurred to date and through the Motion to Dismiss – a large sum. I talked with Bob re a compromise proposal/solution and the following summarizes same:

• You contribute $5k to fees incurred to date;

• You agree to pay all fees incurred v. you re the Motion to Dismiss;

• Fees will not exceed an aggregate $15K (this assumes we are successful via the Motion to Dismiss, without extensive further briefing and without a full hearing on same);

• $5K paid upon signing of Engagement Letter.

I believe this to be a fair compromise and as with any true compromise it stings both sides. Perhaps in short run you incur less if engaging your own counsel. But I'm sure you've considered this question: is there a premium to be paid to maintain strong relationship with Ron and related opportunities and ventures?

**ANSWER:**   Freeland DENIES the aforementioned email demonstrates a conflict or "taking sides on that conflict to benefit himself and his firm." Freeland avers the above cited "Defendant Ron Lorenzini's August 26, 2017 email" is the best evidence of its contents and DENIES any allegation in Paragraph 41 that is inconsistent with that email.

42.    The same email also shows Defendant Ron Lorenzini, instead of properly advising Helgoe and Garber or obtaining their informed consent, pressed for a quick response. He stated:

Respectfully Ron, this is a firm proposal and I need an answer quickly - by Monday morning. Eric needs to know re pleadings and strategy if you in or out.

**ANSWER:**   The characterization of the e-mail in Paragraph 42 is a legal conclusion to which no response is required.  If a response is required Freeland DENIES the first sentence of Paragraph 42.  Freeland avers that the above cited email is the best evidence of its contents and DENIES any allegation in Paragraph 42 that is inconsistent with that email.

43.    In a follow up email to Garber on August 29, 2017 Defendant Ron Lorenzini further bullied Garber into agreeing to the representation, again with no disclosure of the conflicts, risks or informed consent.

**ANSWER:**   Freeland DENIES the allegations in Paragraph 43.

44.    On August 27, 2017, Defendant Ron Lorenzini sent Garber and Helgoe a written engagement agreement for the *Corcoran* Litigation asking them to consent to their "common representation."

**ANSWER:**    Freeland ADMITS the allegations in Paragraph 44, except to deny the written

engagement agreement was sent on August 27, 2017.

45.    Defendants' engagement agreement further wrongly advised Garber and Helgoe that their "common representation" did not involve a concurrent conflict of interest, and that they "reasonably believed" it could provide "competent representation to each of you." Given the adversity of the interests of Garber and Helgoe and the other co-clients, Defendants had a conflict of interest that could not be waived, was not effectively waived and which precluded them from providing competent representation.

**ANSWER:**    Freeland DENIES the allegations in Paragraph 45.

46.    In addition, although Helgoe and Garber were first told their representation would cost only $15,000, that estimate became woefully inadequate because, as a result of the joint conflicted representation, Helgoe and Garber were pulled into having to respond to and/or pay for discovery, most of which involved Robert Corcoran, when, had they been separately represented, the discovery could have been entirely avoided or substantially limited and their respective motions to dismiss could have been advanced and resolved.

**ANSWER:**    Freeland DENIES Garber and Helgoe were told their representation would cost

only $15,000 or that the $15,000 was an estimate.  Freeland also DENIES that Garber and Helgoe

were pulled into having to respond and/or pay for discovery because of the joint representation.

Freeland further DENIES the remaining allegations in Paragraph 46.

47.    Further, after additional fees accrued as a result of the joint conflicted representation, Defendants wrongfully advocated for a split of the defense costs between their already conflicted co-clients and encouraged and advised Helgoe and Garber to agree to an arbitrary 75%/25% split.

**ANSWER:**    Freeland DENIES the allegations in Paragraph 47.

48.    Thus, Defendants not only had a conflict of interest in undertaking the joint representation in the first place, they had a conflict of interest that prevented them from advocating or being involved with the fee split agreement between their co-clients who obviously had individual and particular interests. Accordingly, Defendants encouraged and advocated for the fee split for their own best interests in getting paid and/or the best interests of the other co-clients, as opposed to Helgoe's and Garber's individualized best interests.

**ANSWER:**    Freeland DENIES the allegations in Paragraph 48.

49.    Moreover, further evidencing the conflicted representation, Defendants initially filed counterclaims and third-party claims in the Corcoran Litigation on behalf of Robert Corcoran and one of his entities only. The counterclaims and third-party claims furthered Garber's and

Helgoe's exposure to defense fees charged by Defendants, further entrenched them in protracted discovery – including that which mainly involved Corcoran and his interests only – and further delayed resolution of Garber's and Helgoe's individualized claims and defenses.

**ANSWER:**     Freeland ADMITS a Counterclaim and Third-Party Complaint was filed on behalf

Robert Corcoran, RELI-FL, and RELI-IL in the *Corcoran* Litigation on August 29, 2017 against

Corcoran Consulting, B & B Mills Consulting, and Eric "Bubba" Mills alleging defamation and

breach of contract.  Freeland DENIES the remaining allegations in Paragraph 49.

### Defendants' Negligent Handling of the *Corcoran* Litigation

50.     Instead of asserting Garber's and Helgoe's unwitting and/or noninvolvement in the matters alleged in the *Corcoran* Litigation, Defendants negligently implemented a joint defense strategy that unnecessarily delayed the resolution of the claims against them and had the effect of suggesting that Garber and Helgoe were accomplices to Robert and Brenda Corcoran, even though they had no such involvement in their activities.

**ANSWER:**     Freeland DENIES the allegations in Paragraph 50.

51.     With non-conflicted representation separate from the other defendants Garber and Helgoe would have been distinguished and distanced from the alleged contractual breaches and wrongful conduct of Corcoran, Mueller and Mullinex because they had no agreements with Corcoran Consulting and no knowledge of the agreements with Corcoran. Instead, Defendants' joint conflicted representation furthered the theory that the underlying defendants acted in concert and conspired, among other things. This is a risk that was never disclosed to Garber or Helgoe by Defendants.

**ANSWER:**     Freeland DENIES the allegations in Paragraph 51.

52.     Independent representation for Garber and Helgoe would have also advanced their interests in a prompter and cost-efficient fashion. They stood in a far different position from the other co-clients and could have advanced their defenses with little or no discovery burden. Instead, through the joint conflicted representation their defenses were not advanced, and they became mired in expensive discovery, largely involving Corcoran and the other co-clients. This is a risk that was never disclosed to Garber or Helgoe by Defendants.

**ANSWER:**     Freeland DENIES the allegations in Paragraph 52.

53.     Independent counsel would have also advised Garber and Helgoe of the availability of contribution and indemnity claims against Robert Corcoran and the other co-clients, which, had they been filed, would have further distinguished and distanced their conduct from the "target" defendants and hastened resolution. This is an avenue that was never disclosed to Garber or Helgoe or explored by Defendants.

**ANSWER:**   Freeland DENIES Plaintiffs had meritorious contribution or indemnity claims against Robert Corcoran or the other co-clients or that asserting any such claim would have hastened a resolution.  Plaintiffs did not have meritorious contribution or indemnity claims there was no basis to disclose to Plaintiffs otherwise.

54.   Independent representation also would have sought and obtained for Garber and Helgoe an early settlement with the Corcoran Consulting plaintiffs for a relatively nominal sum, especially given that Helgoe had no involvement in the matters alleged and Garber could have offered assistance to the plaintiffs in their claims against Corcoran and the other named defendants. This is an avenue that was never disclosed to Garber or Helgoe or explored by Defendants.

**ANSWER:**   Freeland DENIES the allegations in Paragraph 54.

55.   Also, because Robert and Brenda Corcoran were paying a greater percentage of the defense fees, Defendants largely, if not entirely, took direction from them in a manner that served their best interests and were either detrimental to or did not consider the individual interests of Garber and Helgoe. This is a fact that was never disclosed to Garber or Helgoe by Defendants.

**ANSWER:**   Freeland DENIES the first sentence of Paragraph 55.  As Freeland did not take positions detrimental to Plaintiffs and did consider their interests there was no basis to disclose to Plaintiffs otherwise.

56.   To make matters even worse, Defendants took direction from Robert Corcoran to refuse to turn over his financial documents in discovery, and implemented an overarching strategy of forcing the *Corcoran* Litigation plaintiffs to spend as much money as possible in hopes of forcing them to settle or drop the case due to an inability to pay plaintiffs' counsel. Defendants did not seek or obtain Garber's or Helgoe's consent to employ this ill-advised, dilatoriness strategy, which resulted in motions to compel, sanctions, increased fees charged to Garber and Helgoe, a delay in the resolution of their individualized claims and defenses, and prejudice to their interests before the court.

**ANSWER:**   Freeland DENIES the allegations in Paragraph 56 and further DENIES the existence of any such strategy of dilatoriness in the *Corcoran* Litigation.

57.   The joint and conflicted representation further harmed Helgoe and Garber because Robert Corcoran and other co-client witnesses were not properly questioned by Defendants in their depositions in order to support Garber's and Helgoe's defense theories when individualized representation would have presented no impediment to such examination. This is a risk that was never disclosed to Garber or Helgoe by Defendants.

**ANSWER:**   Freeland DENIES the allegations in the first sentence of Paragraph 57.  As the factual basis of the first sentence is denied, Freeland states that no such risk existed so there was nothing to disclose to Plaintiffs.

58.   Defendants also never disclosed to Garber or Helgoe the risks, costs, conflicts and negative implications associated with having one of their co-clients terminating Defendants and choosing new counsel to defend the *Corcoran* Litigation. These risks, costs, conflicts and negative implications came to fruition when Robert and Brenda Corcoran terminated Defendants in 2018 and hired new counsel. As a result, Defendants had an even more pronounced conflict of interest because they would have been prohibited from, for example, using confidential client communications learned while counsel for the Corcorans and otherwise vigorously cross examining the Corcoran's to assert Garber's and Helgoe's defenses.

**ANSWER:**   Freeland DENIES the allegations of Paragraph 58.

59.   Due to Defendants' joint conflicted representation and failures, they also failed to advise and address the risks of other co-clients settling the claims against them and leaving Garber and Helgoe as the remaining "target" defendants. This is also a risk that came to pass when the Corcorans hired new counsel and settled with the *Corcoran* Litigation plaintiffs, leaving Garber and Helgoe as the only remaining "target" defendants months prior to trial. As a result, Defendants failed preserve for trial Robert Corcoran's testimony supportive of Garber's and Helgoe's defense theories, Corcoran's settlement put him beyond the reach of the court's subpoena power, and Defendants turned a matter where Garber and Helgoe had little or no involvement or exposure into a case where they were the remaining target defendants unprepared to address the potentially devastating damage claims.

**ANSWER:**   Freeland DENIES the allegations in Paragraph 59.

60.    Defendants also failed to communicate important events in the *Corcoran* Litigation, such as the deposition of Bubba Mills, in time for adequate preparation and involvement by Garber and Helgoe.

**ANSWER:**   Freeland DENIES the allegations in Paragraph 60.

61.    Defendants also were not competent to defend the *Corcoran* Litigation and manage the electronic discovery that was obviously at the center of case. As Eric Freeland admitted in a court filing in the case, he "had never been involved in a case involving e-discovery to the extent involved in this case. Defendants' counsel had never retained an e-discovery firm and was unfamiliar with the data collection and review process involved in a case where more than 35,000 emails were collected." Freeland also admitted he had never used the Relativity software program used to manage the e-discovery.

**ANSWER:**   Freeland DENIES the first sentence of Paragraph 61.  Freeland ADMITS the court

filing included the quotes alleged and that he had never used the Relativity software program to

manage e-discovery prior to the *Corcoran* Litigation.

62.   Freeland's lack of competence harmed Garber and Helgoe through the inordinate amount of time devoted for him to attempt to learn how to handle e-discovery, and through his failure to timely and fully respond to the *Corcoran* Litigation plaintiffs' discovery requests. As a result, orders for compliance were entered, which were not complied with, and ultimately the court entered a sanction award against Freeland in the sum of $38,750.57 and reserved further sanctions if warranted.

**ANSWER:**   Freeland DENIES the allegations in the first sentence of Paragraph 62.  Freeland

ADMITS a sanction of $38,750.57 was recommended by the Magistrate and awarded by the Court

in the *Corcoran* Litigation, which was paid by Freeland, not Garber or Helgoe.  Freeland avers the

court's January 7, 2019 Order is the best evidence of its contents and DENIES any allegation in

Paragraph 62 inconsistent with that Order.  Freeland further avers that he had withdrawn from

Garber and Helgoe's representation in October 2018 and DENIES any harm to Plaintiffs caused

by the sanction award.

63.   Defendants' lack of competence is also demonstrated through Freeland's inability to use rudimentary programs such as Dropbox in gathering and processing data supplied by Garber.

**ANSWER:**   Freeland DENIES the allegations in Paragraph 63.

64.   Defendants' lack of competence and negligence is further demonstrated in their handling of Robert Corcoran's laptop computer. Around the time the *Corcoran* Litigation was filed Corcoran "wiped" his laptop of data. This fact alone presented yet another conflict between Corcoran and Garber and Helgoe that was not disclosed or addressed by Defendants. Further, to make matters worse, Freeland represented to counsel for the *Corcoran* Litigation plaintiffs that a back-up had been made when one had not been made.

**ANSWER:**   Freeland DENIES the allegations in Paragraph 64.  Freeland further DENIES that

he ever knowingly misrepresented any fact to counsel for the *Corcoran* Litigation plaintiffs.

65.   Worse yet, when the Magistrate Daly ordered the laptop to be produced for a third-party forensic review in *Corcoran* Litigation, Freeland disregarded the order and sent it to his own forensic expert.

**ANSWER:**   Freeland ADMITS he directed Robert Corcoran to send the laptop to a third-party expert in an attempt to recover files deleted from the laptop.  Freeland DENIES he disregarded Magistrate Daly's order.

66.   Also, consistent with Defendants' undisclosed overarching strategy of forcing the *Corcoran* Litigation plaintiffs to spend as much money as possible, as dictated by Robert Corcoran, Defendants failed to timely and fully comply with discovery requests and discovery orders by the court in the *Corcoran* Litigation.

**ANSWER:**   Freeland DENIES the strategy alleged and further DENIES the remaining allegations in Paragraph 66.

67.   As a result of Defendants' failures to comply, motions for compliance and sanctions were filed, which further delayed and distracted from the resolution of the claims against Garber and Helgoe, drove up their defense costs, and undermined their standing and credibility before the court.

**ANSWER:**   Freeland ADMITS motions for compliance and sanctions were filed and that the Court found non-compliance with certain orders.  Freeland DENIES the remaining allegations in Paragraph 67.

68.   In a June 14, 2018 Report and Recommendations on the *Corcoran* Litigation plaintiffs' motions for sanctions, Magistrate Judge Reona J. Daly found "the conduct of Defendants' counsel with regard to discovery in this case inexcusable," "there is no excuse for his delay in responding to discovery requests for the previous five months," his "decision to interfere with the laptop was a willful defiance of the Court Order," his conduct was "beyond comprehension," and "his actions are entirely consistent with" an "overarching strategy of forcing the Plaintiffs to spend as much money as possible, in the interest of forcing them to settle or drop the case due to an inability to pay their attorneys." As a result, the court concluded that "ordering Defendants' counsel to pay Plaintiff's expenses incurred due to his persistent delays in responding to discovery is a proportionate response" and ordered Defendant Freeland to pay $38,750.57 and Corcoran to pay $5,000 as a sanction for their misconduct. The court also reserved entering an award of further sanctions pending completion of forensic analysis.

**ANSWER:**   Freeland DENIES any allegation inconsistent with the Magistrate's June 14, 2018 Report and Recommendations.

69.   Chief Judge Reagan adopted Magistrate Daly's Report and Recommendation in its entirety in a January 7, 2019 Memorandum & Order that, among other things, found "Defendants' conduct during the five-month period when Plaintiffs' counsel diligently pursued responses to written discovery requests is inexcusable," "it is unreasonable for Defendants to avoid, delay, and

duck discovery responsibilities for months on end," the "actions mirror the strategy of driving up Plaintiffs' attorneys' fees described" to the court, and that Defendant Freeland's conduct is "unsettling" and "[h]e employed delay tactics to avoid turning over discovery to plaintiffs, and plaintiffs' counsel had to fight for more than five months to secure documents necessary to advance this litigation, at great financial cost to plaintiffs." As a result, Judge Reagan concluded that "[f]inancial sanctions to compensate Plaintiffs for the significant attorneys' fees accrued during the discovery dispute process, which included willful defiance of Judge Daly's orders by Freeland and delay at every opportunity, are proportional and called for in this case."

**ANSWER:**   Freeland DENIES any allegation inconsistent with the Court's January 7, 2019

Memorandum & Order.

70.   The pattern of discovery non-compliance and misconduct by Defendants lead to an additional "death penalty" motion for sanctions against all of Defendants' co-clients, including Garber and Helgoe, that sought among other things an order of default.

**ANSWER:**   Freeland DENIES the allegations in Paragraph 70.

71.   Defendants further failed to comply with expert discovery deadlines. The *Corcoran* Litigation plaintiffs disclosed their damages expert who was prepared to opine that the plaintiffs suffered in excess of $5,000,000 in damages. Despite having a deadline to do so, Defendants never disclosed an expert in response, never field a *Daubert* challenge to the expert's opinions, and failed to disclose to Garber and Helgoe the risks and negative implications of failing to disclose a damages expert or challenging the plaintiffs' damages expert.

**ANSWER:**   Freeland ADMITS that no expert was disclosed to support Garber and Helgoe's

position in the *Corcoran* Litigation but DENIES it was a breach of the standard of care not to

disclose an expert.  Freeland ADMITS he did not file a *Daubert* Motion to challenge the opinions

of the *Corcoran* Litigation plaintiffs' expert but avers this did not foreclose Plaintiffs from cross-

examining that expert to challenge the expert's opinions or bringing such a motion later.  Freeland

further DENIES the remaining allegations in Paragraph 71.

72.   As a direct and proximate result of Defendants' failures Defendants left Garber and Helgoe as the sole remaining target defendants having to defend a case unprepared for trial, with a pattern of discovery failures and noncompliance, a pending "death penalty" motion based on Defendants' discovery misconduct, and an unrebutted claim of over $5,000,000 in damages.

**ANSWER:**   Freeland DENIES the allegations in Paragraph 72.

73.   In addition to the inadequate conflict disclosures and the taking of direction from Robert Corcoran mentioned herein, Defendants failed to adequately communicate with Garber,

18

and hardly ever communicated with Helgoe, about important matters implicating their respective defenses, including but not limited to their:

**ANSWER:**    Freeland DENIES inadequate conflict disclosures or that he took inappropriate direction from Robert Corcoran.    Freeland further DENIES that he failed to adequately communicate with Garber and Helgoe and states that he was directed by Garber and Helgoe to primarily communicate with Garber.

        a)    Failures to seek and obtain a nominal settlement of Garber and Helgoe given Garber's and Helgoe's lack of knowledge and involvement and their ability to offer cooperation in the claims against the target defendant, Robert Corcoran.

**ANSWER:**    Freeland DENIES there was ever an opportunity for Garber and Helgoe to obtain a nominal settlement in the *Corcoran* Litigation and thus DENIES the premise for the allegations in Paragraph 73(a).    Freeland further DENIES that Garber and Helgoe ever offered to provide cooperation with Plaintiffs against Robert Corcoran and thus further DENIES the premise for the allegations in Paragraph 73(a).    Freeland further DENIES failing to seek any nominal settlement for Garber and Helgoe in the *Corcoran* Litigation.    Freeland DENIES the remaining allegations in Paragraph 73(a).

        b)    Failures to seek or obtain discovery concerning Garber and Helgoe's lack of involvement in the conduct alleged in the *Corcoran* Litigation which would have established their defenses and provided grounds for an early exit from the case;

**ANSWER:**    Freeland DENIES that he failed to communicate with Garber and Helgoe regarding seeking or obtaining discovery in the *Corcoran* Litigation or in the conduct alleged in the *Corcoran* Litigation.    Freeland DENIES that Garber had a lack of involvement in the conduct alleged in the *Corcoran* Litigation and thus DENIES the premise of the allegations in Paragraph 73(b).    Freeland DENIES that any discovery he could have conducted would have established facts that would have provided grounds for an early exit from the case and thus DENIES the premise of the allegations in Paragraph 73(b).    Freeland DENIES the remaining allegations in Paragraph 73(b).

       c)     Failures to elicit and preserve testimony from Robert Corcoran and other co-clients at their depositions that would have limited or otherwise absolved Garber and Helgoe of liability;

**ANSWER:**    Freeland DENIES that he failed to communicate with Garber and Helgoe regarding the testimony of Robert Corcoran. Freeland states that Garber was physically present for Robert Corcoran's deposition. Freeland DENIES that any other co-clients of Plaintiffs were deposed in the *Corcoran* Litigation. Freeland DENIES that any questions he would have asked Robert Corcoran would have limited or absolved Garber of liability and thus DENIES the premise of the allegations in Paragraph 73(c). Freeland DENIES the remaining allegations in Paragraph 73(c).

       d)     Refusals to turn over Robert Corcoran's laptop and documents despite multiple requests and court orders compelling its production;

**ANSWER:**    Freeland DENIES that he refused to turn over Robert Corcoran's laptop, and thus DENIES the premise of the allegations in Paragraph 73(d). Freeland DENIES that he failed to communicate with Garber and Helgoe concerning the turnover of Robert Corcoran's laptop and documents during the *Corcoran* Litigation.

       e)     Failures to determine or disclose to Garber and Helgoe and the Court that Robert Corcoran had "wiped" the laptop until the May 4, 2018 hearing on plaintiffs' the Motion to Compel;

**ANSWER:**    Freeland ADMITS he did not disclose to the Court until May 4, 2018 that Robert Corcoran had "wiped" his laptop. Freeland lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 73(e).

       f)     Representations to opposing counsel and the Court during the May 4, 2018 hearing that notwithstanding the "wipe" there was no harm because a backup of the deleted file existed when in fact no such backup existed;

**ANSWER:**    Freeland ADMITS he represented to opposing counsel and the Court during the May 4, 2018 hearing that a backup file existed of the materials deleted on the laptop by Robert Corcoran. Freeland avers that at the time he made this disclosure to opposing counsel and the

Court, he had been provided with information by Robert Corcoran attesting to the existence of a "backup" to the deleted file.  Freeland DENIES that this was not communicated to Garber and Helgoe.

   g) Tendering Corcoran's laptop for review and reconstruction by a third-party in direct violation of the Court's May 7, 2018 order that a neutral third party review the laptop, thereby tampering with electronic evidence;

**ANSWER:** Freeland ADMITS the Court found non-compliance with certain orders.  Freeland DENIES that he failed to communicate with Garber and Helgoe that he had directed Robert Corcoran to send the laptop to a third-party expert in an attempt to recover files deleted.

   h) Failures to provide supplemental responses to interrogatories and requests for production in violation of the court's orders;

**ANSWER:** Freeland ADMITS the Court found non-compliance with certain orders.  Freeland DENIES failing to provide supplemental responses to interrogatories and requests for production in violation of the court's orders and failing to communicate with Garber and Helgoe regarding supplemental responses to interrogatories, requests for production, and discovery orders.

   i) Employment of delay tactics to avoid turning over otherwise responsive discovery and failed to produce Robert Corcoran's financial documents in violation of the court's May 7, 2018 order;

**ANSWER:** Freeland DENIES the existence of any strategy of delay tactics to avoid turning over otherwise responsive discovery and thus DENIES the premise of Paragraph 73(i).  Freeland ADMITS the court found non-compliance with certain orders related to the production of financial documents.  Freeland DENIES that this was not communicated to Garber and Helgoe.

   j) Implementation of an overarching defense strategy of forcing the *Corcoran* Litigation plaintiffs to spend as much money as possible in hopes of forcing them to settle or drop the case due to an inability to pay plaintiffs' counsel;

**ANSWER:**   Freeland DENIES the existence of any such strategy alleged in Paragraph 73(j) and thus DENIES the premise of the allegations in Paragraph 73(j).  Freeland further DENIES the remaining allegations of Paragraph 73(j).

> k)   Failures to timely disclose a damages expert; and

**ANSWER:**   Freeland ADMITS that no expert was disclosed to support Garber and Helgoe's position in the *Corcoran* Litigation but DENIES it was a breach of the standard of care not to disclose an expert.  Freeland DENIES that he failed to communicate with Garber and Helgoe regarding retaining and disclosing a damages expert in the *Corcoran* Litigation.

> l)   Failures to file a *Daubert* motion to challenge the opinions of the *Corcoran* Litigation plaintiffs' damages expert within the court's deadline for such motions.

**ANSWER:**   Freeland ADMITS he did not file a *Daubert* Motion to challenge the opinions of the *Corcoran* Litigation plaintiffs' expert but avers this did not foreclose Plaintiffs from cross-examining that expert or bringing such a motion later.

### Garber & Helgoe are Forced to Settle

74.   In October 2018, Garber and Helgoe retained new counsel to represent them in the *Corcoran* Litigation. As a result, they incurred over $130,000 in additional fees and costs in an attempt to mitigate the harm caused by Defendants and advance their defenses. Given the potentially devastating exposure created by Defendants' failures, and to prevent further losses, Garber and Helgoe ultimately agreed to settle the *Corcoran* Litigation for a sum far greater than they would have had to pay if they had been represented by independent, competent counsel.

**ANSWER:**   Freeland ADMITS that in October 2018 Plaintiffs retained new counsel to represent them in the *Corcoran* Litigation.  Freeland DENIES the remaining allegations in Paragraph 74.

75.   But for Defendants' negligence, the Garber and Helgoe would have resolved the *Corcoran* Litigation, either through dismissal, a defense verdict at trial or, alternatively, in a settlement for an amount substantially less than the sums it paid, and it would not have incurred as much in counsel fees in defending the *Corcoran* Litigation.

**ANSWER:**   Freeland DENIES the allegations in Paragraph 75.

### COUNT I-LEGAL MALPRACTICE
### GARBER v. RONALD N. LORENZINI

76.     Plaintiff Garber realleges and incorporates by reference Paragraphs 1-75 as though fully set forth herein.

**ANSWER:**     Freeland realleges and incorporates by reference his answers to Paragraphs 1-75, above, as though fully restated herein.

77.-81.   The allegations of Count I are not directed at Defendant Freeland and thus no response is required.  If a response is required, Freeland DENIES each and every allegation.

**COUNT II-LEGAL MALPRACTICE**
**GARBER v. ERIC A. FREELAND**

82.     Plaintiff Garber realleges and incorporates by reference Paragraphs 1-75 as though fully set forth herein.

**ANSWER:**     Freeland realleges and incorporates by reference his answers to Paragraphs 1-75, above, as though fully restated herein.

83.     Plaintiff Garber retained Defendant Eric Freeland in 2017 to provide a legal defense in the *Corcoran* Litigation. Defendant Eric Freeland was an agent and authorized representative of Lorenzini & Associates, Ltd. and one of the attorneys in charge of Garber's defense appeared as counsel for Garber in the *Corcoran* Litigation. As such, he owed Garber the duty of care to possess the knowledge, skill and care that well-qualified attorneys would ordinarily possess and apply under similar circumstances, in order to properly advise, take action on behalf of, and protect his legal rights and interests.

**ANSWER:**     Freeland ADMITS the firm Lorenzini & Associates, Ltd. was retained by Garber in 2017 to represent him in the *Corcoran* Litigation.  Freeland ADMITS he was employed by Lorenzini & Associates, Ltd. during the relevant period of time and filed his Appearance on behalf of Garber in the *Corcoran* Litigation.  Freeland ADMITS owing Garber those duties imposed by law and DENIES each and every remaining allegation in Paragraph 83.

84.     In breach of the aforesaid duty of care, Defendant Eric Freeland was guilty of one or more of the following negligent acts and/or omissions:

a)     Failed to provide Garber with the necessary disclosures with respect to the conflict of interest that existed by way of the joint representation;

b)     Failed to obtain Garber's informed consent to the joint and conflicted representation;

23

        c)      Failed to advise Garber of the risks attendant to the joint and conflicted representation;

        d)      Undertook a joint and conflicted representation and failed to advise Garber to retain independent counsel;

        e)      Favored the interests of the Corcorans over the interests of Garber by undertaking the joint and conflicted representation and negotiating a fee-split agreement that benefited the Corcorans, allowed them to control the defense, and kept Garber in the case in order to protect the Corcorans from liability and attorneys' fees rendered in defense of the Corcorans;

        f)      Failed to file contribution or indemnity claims on the behalf Garber against the Corcorans;

        g)      Failed to timely, properly or adequately respond to discovery requests;

        h)      Violated or failed to comply with numerous court orders and deadlines;

        i)      Failed to file a *Daubert* motion against the plaintiffs' damages expert within the court ordered deadline to do so;

        j)      Failed to disclose a damages expert; and

        k)      Was otherwise careless and negligent in the defense of Garber.

**ANSWER:**    Freeland ADMITS with respect to Paragraphs 84 (g), (h), (i) & (j) that some discovery requests served by the Plaintiffs in the *Corcoran* Litigation were not timely responded to, the court found non-compliance with certain orders, that he failed to file a *Daubert* motion to challenging the Plaintiffs' damages expert in the *Corcoran* Litigation and that he failed to disclose a damages expert to support of Garber and Helgoe's position.  Freeland DENIES that any of these acts were a breach of the standard of care.  Freeland DENIES the remaining allegations of Paragraph 84 including all subparts.

      85.    As a direct and proximate result of the foregoing, *inter alia*, Garber was not promptly dismissed or settled out of the *Corcoran* Litigation and instead he became mired in discovery and motion practice, mainly involving Corcoran's conduct and interests, discovery was not elicited necessary for Garber's defense, claimed damages were unchallenged and unrebutted, sanctions were entered, credibility before the court was undermined, a pattern of discovery non-compliance and failings caused by Defendants and attributed Garber was established, all of which forced Garber to resolve the *Corcoran* Litigation for an amount in excess of that justified by the facts and evidence.

**ANSWER:**     Freeland DENIES the allegations in Paragraph 85.

86.     But for Eric Freeland's negligence, Garber would have resolved the plaintiffs' claims, either through dismissal, a defense verdict at trial or, alternatively, in settlement, for an amount substantially less than the sums he paid, and he would not have incurred as much in counsel fees in defending the *Corcoran* Litigation.

**ANSWER:**     Freeland DENIES the allegations in Paragraph 86.

87.     Due to the conflict of interest that existed at the outset of the representation, Eric Freeland was prohibited from undertaking Garber's representation. Therefore, Garber is entitled to disgorgement for any fees paid to Eric Freeland during the conflicted representation.

**ANSWER:**     Freeland DENIES the allegations in Paragraph 87.

## COUNT III-LEGAL MALPRACTICE
### GARBER v. LORENZINI & ASSOCIATES, LTD.

88.     Plaintiff Garber realleges and incorporates by reference Paragraphs 1-87 as though fully set forth herein.

**ANSWER:**     Freeland realleges and incorporates by reference his answers to Paragraphs 1-87, above, as though fully restated herein.

89.-91. The allegations of Count III are not directed at Defendant Freeland, and thus no response is required.  If a response is required, Freeland DENIES each and every allegation.

## COUNT IV-LEGAL MALPRACTICE
### HELGOE v. RONALD N. LORENZINI

92.     Plaintiff Helgoe realleges and incorporates by reference Paragraphs 1-75 as though fully set forth herein.

**ANSWER:**     Freeland realleges and incorporates by reference his answers to Paragraphs 1-75, above, as though fully restated herein.

93.-97. The allegations of Count IV are not directed at Defendant Freeland, and thus no response is required.  If a response is required, Freeland DENIES each and every allegation.

## COUNT V-LEGAL MALPRACTICE
### HELGOE v. ERIC A. FREELAND

98.     Plaintiff Helgoe realleges and incorporates by reference Paragraphs 1-75 as though fully set forth herein.

**ANSWER:**    Freeland realleges and incorporates by reference his answers to Paragraphs 1-75, above, as though fully restated herein.

99.    Plaintiff Helgoe retained Defendant Eric Freeland in 2017 to provide a legal defense in the *Corcoran* Litigation. Defendant Eric Freeland was an agent and authorized representative of Lorenzini & Associates, Ltd. and was one of the attorneys in charge of the Helgoe's defense and Freeland appeared as counsel for Helgoe in the *Corcoran* Litigation. As such, he owed Helgoe the duty of care to possess the knowledge, skill and care that well-qualified attorneys would ordinarily possess and apply under similar circumstances, in order to properly advise, take action on behalf of, and protect her legal rights and interests.

**ANSWER:**    Freeland ADMITS the firm Lorenzini & Associates, Ltd. was retained by Helgoe in 2017 to represent her in the *Corcoran* Litigation.  Freeland ADMITS he was employed by Lorenzini & Associates, Ltd. during the relevant period of time and filed his Appearance on behalf of Helgoe in the *Corcoran* Litigation.  Freeland ADMITS to owing Helgoe only those duties imposed by law and DENIES each and every remaining allegation in Paragraph 99.

100.    In breach of the aforesaid duty of care, Defendant Eric Freeland was guilty of one or more of the following negligent acts and/or omissions:

a)    Failed to provide Garber with the necessary disclosures with respect to the conflict of interest that existed by way of the joint representation;

b)    Failed to obtain Helgoe's informed consent to the joint and conflicted representation;

c)    Failed to advise Helgoe of the risks attendant to the joint and conflicted representation;

d)    Undertook a joint and conflicted representation and failed to advise Helgoe to retain independent counsel;

e)    Favored the interests of the Corcorans over the interests of Helgoe by undertaking the joint and conflicted representation and negotiating a fee-split agreement that benefited the Corcorans, allowed them to control the defense, and kept Helgoe in the case in order to protect the Corcorans from liability and attorneys' fees rendered in defense of the Corcorans;

f)    Failed to file contribution or indemnity claims on the behalf Helgoe against the Corcorans;

g)    Failed to timely, properly or adequately respond to discovery requests;

h)    Violated or failed to comply with numerous court orders and deadlines;

i)      Failed to file a *Daubert* motion against the plaintiffs' damages expert within the court ordered deadline to do so;

j)      Failed to disclose a damages expert;

k)      Was otherwise careless and negligent in the defense of Helgoe.

**ANSWER:**   Freeland ADMITS with respect to Paragraphs 100 (g), (h), (i) & (j) that some discovery requests served by the Plaintiffs in the *Corcoran* Litigation were not timely responded to, the court found non-compliance with certain orders, that he failed to file a *Daubert* motion to challenging the Plaintiffs' damages expert in the *Corcoran* Litigation and that he failed to disclose a damages expert to support of Garber and Helgoe's position.  Freeland DENIES that any of these acts were a breach of the standard of care.   Freeland DENIES the remaining allegations of Paragraph 84 including all subparts.

101.    As a direct and proximate result of the foregoing, *inter alia*, Helgoe was not promptly dismissed or settled out of the *Corcoran* Litigation and instead she became mired in discovery and motion practice, mainly involving Corcoran's conduct and interests, discovery was not elicited necessary for Garber's defense, claimed damages were unchallenged and unrebutted, sanctions were entered, credibility before the court was undermined, a pattern of discovery non-compliance and failings caused by Defendants and attributed Helgoe was established, all of which forced Helgoe to resolve the *Corcoran* Litigation for an amount in excess of that justified by the facts and evidence.

**ANSWER:**   Freeland DENIES the allegations in Paragraph 101.

102.    But for Eric Freeland's negligence, Helgoe would have resolved the plaintiffs' claims, either through dismissal, a defense verdict at trial or, alternatively, in settlement, for an amount substantially less than the sums she paid, and she would not have incurred as much in counsel fees in defending the *Corcoran* Litigation.

**ANSWER:**   Freeland DENIES the allegations in Paragraph 102.

103.    Due to the conflict of interest that existed at the outset of the representation, Eric Freeland was prohibited from undertaking Helgoe's representation. Therefore, Helgoe is entitled to disgorgement for any fees paid to Eric Freeland during the conflicted representation.

**ANSWER:**   Freeland DENIES the allegations in Paragraph 103.

## COUNT VI-LEGAL MALPRACTICE
## HELGOE v. LORENZINI & ASSOCIATES, LTD.

104.   Plaintiff Helgoe realleges and incorporates by reference Paragraphs 1-75 and Paragraphs 92-103 as though fully set forth herein.

**ANSWER:**   Freeland realleges and incorporates by reference his answers to Paragraphs 1-75 and 92-103, above, as though fully restated herein.

105.-107.   The allegations of Count VI are not directed at Defendant Freeland, and thus no response is required.  If a response is required, Freeland DENIES each and every allegation.

**WHEREFORE**, Defendant, ERIC A. FREELAND, respectfully requests that this Honorable Court enter Judgment in his favor, and against Plaintiffs, SHERRY HELGOE and RONALD GARBER, and for such other and further relief this Honorable Court deems equitable and just.

## AFFIRMATIVE DEFENSES

Defendant, ERIC A. FREELAND ("Freeland"), by and through his attorneys, Barone Law Group, P.C., and for his Affirmative Defenses to the Complaint for Legal Malpractice filed by Plaintiffs, RONALD GARBER ("Garber") and SHERRY HELGOE ("Helgoe") (collectively "Plaintiffs"), states and alleges as follows:

## GENERAL DENIAL

All allegations, characterizations, statements, and legal conclusions in Plaintiffs' Complaint that are not specifically admitted in the above Answer are denied.

## FIRST AFFIRMATIVE DEFENSE
## FAILURE TO STATE A CLAIM

Plaintiff's Complaint fails to state a claim upon which relief may be granted.

WHEREFORE, Defendant, Eric A. Freeland, prays that Plaintiff's Complaint be dismissed.

## SECOND AFFIRMATIVE DEFENSE
### (PROXIMATE CAUSE: SUPERSEDING, INTERVENING COUNSEL)

1.      Plaintiffs hired Lorenzini & Associates, Ltd. to defend their interests in the underlying *Corcoran* Litigation.

2.      Plaintiffs allege, *inter alia*, that Defendants were negligent in their defense of the Corcoran Litigation on behalf of Plaintiffs (in their role as Defendants in the Corcoran Litigation) because "[d]espite having a deadline to do so, Defendants never disclosed an expert in response [to Plaintiffs' expert in the Corcoran Litigation], never filed a *Daubert* challenge to the expert's opinions…" [*See*, D.E. #1, ¶71]. As a result of this alleged conduct by Defendants, Plaintiffs were allegedly forced to settle the Corcoran Litigation for an amount greater than they would have paid otherwise.

3.      On October 2, 2018, Freeland was granted leave to withdraw as counsel for Garber and Helgoe in the Corcoran Litigation.

4.      On October 17, 2018, attorneys Clinton Cameron and James J. Sanders filed Appearances on behalf of Garber and Helgoe in the Corcoran Litigation.

5.      On October 18, 2018, the *Corcoran* Litigation was continued for trial to begin on October 7, 2019.

6.      Plaintiffs did not incur any damages related to Defendants' alleged malpractice with respect to expert discovery in the *Corcoran* Litigation until Plaintiffs settled out of the *Corcoran* Litigation, on or about February 12, 2019.

7.      Plaintiffs allege that but for Defendants' alleged malpractice, Plaintiffs would have settled for a lesser amount in the *Corcoran* Litigation, or would have prevailed at a trial.

8.      However, Attorneys Cameron and Sanders could have remedied Defendants' alleged malpractice relative to expert discovery in the *Corcoran* Litigation until the case was fully

dismissed on March 27, 2019.

9.      That if the allegations contained in Plaintiffs' Complaint are true, then the action

(or, inaction) of Attorneys Cameron and Sanders was an intervening proximate cause of the

injuries and damages alleged and Plaintiffs' claims are barred in whole or in part.

### ADDITIONAL AFFIRMATIVE DEFENSES

Freeland state that these named Affirmative Defenses are based on, and therefore

necessarily limited by, the records and information presently recollected and thus far discovered.

Freeland therefore reserve the right to assert additional affirmative defenses that are revealed

during the course of its investigation of this matter.

WHEREFORE, Defendant, Eric A. Freeland, respectfully requests this Court enter a

judgment be entered in their favor and against the Plaintiffs, and this Court award any such other

relief as it deems equitable and just.

Respectfully Submitted,
**ERIC A. FREELAND**

By: _One of His Attorneys_

Anthony G. Barone (6196315)
Jason W. Jochum (6315450) (*pro hac vice*)
Zach McGourty (6331439) (*pro hac vice*)
Barone Law Group, P.C.
17W635 Butterfield Rd., Suite 145
Oakbrook Terrace, IL 60181
Phone: 630-472-0037
*abarone@baronelawgroup.com*
*jjochum@baronelawgroup.com*
*zmcgourty@baronelawgroup.com*